[No. H030399. Sixth Dist. Mar. 20, 2007.]

LAURENCE WRIGHT, Plaintiff, Cross-defendant and Appellant, v.
GHYATH ISSAK et al., Defendants, Cross-complainants and Respondents.

**COUNSEL**

Dewar & Rockwood and Terry G. Rockwood for Plaintiff, Cross-defendant and Appellant.

Thoits, Love, Hershberger & McLean, Stephen C. Gerrish and Kenneth R. VanVleck for Defendants, Cross-complainants and Respondents.

**OPINION**

**PREMO, J.—** ▆▆ After a dispute concerning an incomplete home remodeling job, plaintiff, contractor Laurence Wright, sued defendants, homeowners Ghyath Issak and Barbara Weber, for breach of contract and related causes of action. He sought recovery of approximately $11,000. Defendants answered

by principally alleging that plaintiff was not a licensed contractor. (Bus. & Prof. Code, § 7031, subd. (a) [unlicensed contractor may not sue for unpaid work that requires a license].)[1] They also filed a cross-complaint for fraud and related causes of action. They principally sought reimbursement of the amount paid to plaintiff. (§ 7031, subd. (b) [person may sue unlicensed contractor to recover compensation paid for work that requires a license].) After an unreported court trial, the trial court found for defendants on the complaint and cross-complaint. It awarded defendants approximately $27,000 in reimbursement plus $10,000 in punitive damages. It later added to the award $90,000 in contractual attorney fees and approximately $7,000 in costs. On appeal, plaintiff contends that the trial court erred as a matter of law by finding that he was an unlicensed contractor. We affirm the judgment.

## BACKGROUND

We glean and accept the following from the trial court's statement of decision.

Plaintiff worked on defendants' home during a four-month period in 2004. In June, he paid a crew of three to five employees approximately $15,000 for approximately 4,000 man hours. State Compensation Insurance Fund records for November 2003 through August 2004 show that plaintiff reported, under penalty of perjury, a payroll of $312 while having an actual payroll of $135,000. They show that plaintiff reported zero or next to zero payroll for every payroll period between his initial application for workers' compensation insurance in May 2002 and the end of 2004. Plaintiff's underreporting was not inadvertent. It was his pattern and practice from the first moment he applied for workers' compensation insurance.

The contract between plaintiff and defendants provided that defendants would pay plaintiff labor and material costs, plus a 12 percent markup of those costs for overhead, and plus an 8 percent markup of the cost-plus-overhead amount for profit. The amount for labor costs that plaintiff reported to defendants and defendants paid to plaintiff was twice the amount that plaintiff actually incurred.

The trial court found that plaintiff was not a licensed contractor because his license had been automatically suspended by operation of section 7125.2 for failure to obtain and maintain workers' compensation insurance.

---

[1] Further unspecified statutory references are to the Business and Professions Code.

### DISCUSSION

Plaintiff does not dispute that defendants hired him to perform work requiring a contractor's license. (§ 7026.) And he accepts that, unless he was a "duly licensed contractor," (1) he could not sue defendants for money due because of the work, and (2) defendants could sue him for reimbursement of money paid to him because of the work. (§ 7031.) What plaintiff does dispute is the trial court's interpretation of section 7125.2.

■ We review a trial court's statutory interpretation de novo. (*Smith v. Workers' Comp. Appeals Bd.* (2002) 96 Cal.App.4th 117, 123 [116 Cal.Rptr.2d 728].) " 'A fundamental rule of statutory construction is that a court should ascertain the intent of the Legislature so as to effectuate the purpose of the law. . . . In construing a statute, our first task is to look to the language of the statute itself. . . . When the language is clear and there is no uncertainty as to the legislative intent, we look no further and simply enforce the statute according to its terms. . . .' . . . [¶] In examining the language of the statute, we must consider 'the context of the statute . . . and the statutory scheme of which it is a part. "We are required to give effect to statutes 'according to the usual, ordinary import of the language employed in framing them.' . . ." . . . " 'If possible, significance should be given to every word, phrase, sentence and part of an act in pursuance of the legislative purpose.' . . . 'When used in a statute [words] must be construed in context, keeping in mind the nature and obvious purpose of the statute where they appear.' . . . Moreover, the various parts of a statutory enactment must be harmonized by considering the particular clause or section in the context of the statutory framework as a whole." ' " (*Id.* at pp. 123–124, citations omitted.)

Section 7125.2 states the following:

"The failure of a licensee to obtain or maintain workers' compensation insurance coverage, if required under this chapter, shall result in the automatic suspension of the license by operation of law in accordance with the provisions of this section, but this suspension shall not affect, alter, or limit the status of the licensee as an employer for purposes of Section 3716 of the Labor Code.

"(a) The license suspension imposed by this section is effective upon the earlier of either of the following:

"(1) On the date that the relevant workers' compensation insurance coverage lapses.

"(2) On the date that workers' compensation coverage is required to be obtained.

"(b) A licensee who is subject to suspension under paragraph (1) of subdivision (a) shall be provided a notice by the registrar [of contractors] that includes all of the following:

"(1) The reason for the license suspension and the effective date.

"(2) A statement informing the licensee that a pending suspension will be posted to the license record for not more than 45 days prior to the posting of any license suspension periods required under this article.

"(3) The procedures required to reinstate the license.

"(c) Reinstatement may be made at any time following the suspension by showing proof of compliance as specified in Sections 7125 and 7125.1.

"(d) In addition, with respect to an unlicensed individual acting in the capacity of a contractor who is not otherwise exempted from the provisions of this chapter, a citation may be issued by the registrar under Section 7028.7 for failure to comply with this article and to maintain workers' compensation insurance. An opportunity for a hearing as specified in Section 7028.10 will be granted if requested within 15 working days after service of the citation."

■ In relevant summary, section 7125.2 states that a contractor's license is automatically suspended as of the date the contractor was required to obtain workers' compensation insurance but did not. This language cannot be clearer. Its effect is that, because plaintiff underreported his payroll and, thus, did not obtain workers' compensation insurance in 2004, plaintiff's license was suspended before, during, and after he performed work on defendants' home.

Plaintiff disagrees. According to plaintiff, section 7125.2 also contradictorily states that automatic suspension happens "in accordance with the provisions of [section 7125.2]," which includes the registrar's notice detailing the reasons for a "pending" suspension and the means for reinstatement. He relies on *Smith v. Workers' Comp. Appeals Bd., supra*, 96 Cal.App.4th 117, to argue that he had a valid contractor's license despite his lack of workers' compensation coverage because he never received a registrar's notice. Plaintiff's analysis is erroneous.

First, plaintiff's argument fails at the threshold. If the failure to receive a registrar's notice overcomes automatic suspension, it necessarily was plaintiff's burden to prove lack of notice. But, given that the trial was not reported, plaintiff has submitted this case for review on the basis of a clerk's transcript only. "When an appeal is submitted on a record of this kind, the reviewing court *conclusively* presumes the evidence was ample to sustain the trial court's factual findings. The only question is whether the findings support the judgment." (*Construction Financial v. Perlite Plastering Co.* (1997) 53 Cal.App.4th 170, 179 [61 Cal.Rptr.2d 574].) Thus, in this context, we conclusively presume that plaintiff failed to carry his burden to prove lack of notice. The trial court's finding (no license) therefore supports the judgment (lack of recovery; reimbursement).

In any event, plaintiff's argument fails on the merits. *Smith* interpreted the prior version of section 7125.2. That statute had language lending "support for two opposed interpretations." (*Smith v. Workers' Comp. Appeals Bd., supra,* 96 Cal.App.4th at p. 126.) On the one hand, the statute provided for automatic suspension by operation of law for failure to "maintain" workers' compensation insurance; on the other hand, the statute directed the registrar to give notice to any licensee who failed to "maintain" insurance. The court resolved the conflict in favor of the notice provision after examining the statutory schemes governing the licensing of contractors and workers' compensation insurance.

The current version of section 7125.2 is materially different from the prior version—it has two failure prongs: failure to "obtain"; and failure to "maintain." Section 7125.2, subdivision (a) then goes on to state the effective suspension dates for the two prongs: subdivision (a)(1) implicitly pertains to the failure-to-maintain prong by providing that the effective date is the date that coverage lapses; and subdivision (a)(2) explicitly pertains to the failure-to-obtain prong by providing that the effective date is the date that coverage should have been obtained. Thereafter, section 7125.2, subdivision (b) goes on to provide for a registrar's notice only if the suspension is for failure to maintain ("paragraph (1) of subdivision (a)"). A case about underreporting payroll is, by definition, a failure-to-obtain case rather than a failure-to-maintain case.[2]

---

[2] The statutory scheme makes perfect sense. The registrar gives notice for failure to maintain because a licensee who fails to maintain is necessarily in the registrar's system and the registrar presumably knows when a licensee who is already in the system fails to maintain. But the registrar cannot give notice for failure to obtain because a licensee who does not obtain is necessarily outside the system (or what the licensee failed to obtain is outside the system) and the registrar cannot know when someone outside the system should be inside the system.

We observe that the automatic-suspension-without-notice mechanism occurs elsewhere in the provisions of the Business and Professions Code governing contractors. For example, the following scheme applies to corporations.

If a corporation applies for a contractor's license, the corporation must qualify through either a responsible managing officer or a responsible managing employee (qualifier), who is qualified for the licensing classification for which the corporation is applying. (§ 7068, subd. (b)(3).) The qualifier must be a bona fide officer or employee of the corporation and must be actively engaged in the work covered by the license. (*Id.*, subd. (c).) The qualifier must exercise direct supervision over the work for which the license is issued to the extent necessary to secure full compliance with the provisions of the law. (§ 7068.1.) If a corporation's qualifier leaves the corporation's employ, the corporation or the qualifier must so notify the registrar in writing, and the corporation must replace the qualifier within 90 days. (§ 7068.2.) To replace a qualifier, the corporation must file a new application designating the new qualifier. If a corporation's qualifier is not replaced within 90 days, the corporation's license is automatically suspended, or the specialty classification is removed. (*Ibid.*) The scheme is enforced by denying the corporate licensee recovery and subjecting it to reimbursement under section 7031. (See, e.g., *Buzgheia v. Leasco Sierra Grove* (1997) 60 Cal.App.4th 374 [70 Cal.Rptr.2d 427]; *Construction Financial v. Perlite Plastering Co., supra*, 53 Cal.App.4th 170.)

"The purpose of the licensing law is to protect the public from incompetence and dishonesty in those who provide building and construction services. . . . The licensing requirements provide minimal assurance that all persons offering such services in California have the requisite skill and character, understand applicable local laws and codes, and know the rudiments of administering a contracting business. . . . [¶] Section 7031 advances this purpose by withholding judicial aid from those who seek compensation for unlicensed contract work. The obvious statutory intent is to discourage persons who have failed to comply with the licensing law from offering or providing their unlicensed services for pay. [¶] Because of the strength and clarity of this policy, it is well settled that section 7031 applies despite injustice to the unlicensed contractor. 'Section 7031 represents a legislative determination that the importance of deterring unlicensed persons from engaging in the contracting business *outweighs any harshness between the parties*, and that such deterrence can best be realized by denying violators the right to maintain any action for compensation in the courts of this state.' " (*Hydrotech Systems, Ltd. v. Oasis Waterpark* (1991) 52 Cal.3d 988, 995 [277 Cal.Rptr. 517, 803 P.2d 370], citations omitted, original italics.)

## DISPOSITION

The amended judgment is affirmed.

Rushing, P. J., and Elia, J., concurred.