[No. C061517. Third Dist. Apr. 23, 2010.]

SHANE LORANGER, Plaintiff, Cross-defendant and Respondent, v.
RONALD JONES et al., Defendants, Cross-complainants and Appellants.

**COUNSEL**

Hamilton Law Offices and Timothy L. Hamilton for Defendants, Cross-complainants and Appellants.

Robert V. Cohune for Plaintiff, Cross-defendant and Respondent.

**OPINION**

**CANTIL-SAKAUYE, J.**—Business and Professions Code section 7125.2[1] provides for the automatic suspension by operation of law of the license of a contractor who fails to obtain or maintain workers' compensation insurance coverage. In *Wright v. Issak* (2007) 149 Cal.App.4th 1116 [58 Cal.Rptr.3d 1] (*Wright*), the court concluded a contractor who had intentionally and vastly underreported his payroll to the State Compensation Insurance Fund (SCIF) failed to obtain workers' compensation insurance triggering the automatic suspension of his license pursuant to section 7125.2, and as a result he could not sue for unpaid work that required a license (§ 7031, subd. (a)) and he could be sued for reimbursement of compensation already paid (§ 7031, subd. (b)).

In this case we consider whether a licensed contractor who has a policy of workers' compensation covering his employees, who uses a subcontractor not knowing he is unlicensed and knowingly employs his 13-year-old son and his son's friend, who do not have work permits, as well as another person who does not have a contractor's license, to help perform construction work, is likewise subject to the sanctions of section 7031, subdivisions (a) and (b), because of an automatic suspension under section 7125.2. We conclude in this situation there was no automatic suspension of the contractor's license in effect. We shall affirm the trial court's judgment awarding damages to the contractor.

## FACTUAL AND PROCEDURAL BACKGROUND

Licensed contractor Shane Loranger, doing business as Shane Loranger Construction (hereafter Loranger), contracted with Ronald and Carol Jones (the Joneses) to build a single-family residence on their property. During construction, the Joneses requested certain extras or upgrades. The Joneses paid for a portion of the extras, but refused to pay Loranger's final billing.

---

[1] Hereafter, undesignated statutory references are to the Business and Professions Code.

Loranger filed an action against the Joneses for breach of contract, foreclosure of mechanic's lien, quantum meruit, and fraud. The Joneses filed a cross-complaint for breach of contract, breach of express and implied warranties, negligence, negligent misrepresentation, and recovery on Loranger's contractor's license bond, all based on claims that Loranger failed to perform his work in a good, timely, and workmanlike manner, and that he abandoned the project before completion. The matter was tried before the court without a jury.

### A. The Evidence Regarding Loranger's Construction of the Joneses' Home

Loranger, a licensed general contractor, testified regarding his contract with the Joneses to build a house for them in the community of Lake Almanor in Plumas County based on plans provided by the Joneses.[2] Loranger testified to his subsequent performance of that contract, as well as additional work performed at the request of the Joneses for extras and upgrades. Loranger described the interim invoices he submitted to the Joneses, their satisfaction with his work, and payment of the invoices. A certificate of occupancy was issued by Plumas County for the home. The Joneses subsequently complained that a number of items were not completed and others were not properly completed. As a result of a subsequent county inspection, a punch list of items that needed correction was developed. Loranger claimed the Joneses refused to allow him on the property to correct the items. The Joneses refused to pay Loranger's final billings.

The Joneses later discovered cracks in the foundation and walls of the home. Loranger and the Joneses each called an expert witness in structural engineering or design to give an opinion as to the cause and likely effect of the cracks.

### B. The Evidence and Trial Court Proceedings Relating to Loranger's Use of Unlicensed Workers

On cross-examination, Loranger acknowledged hiring Earl Houk of Houk Electrical as the electrician for the construction of the Joneses' house. Earl Houk had 40 years of experience as an electrician, and Loranger had used

---

[2] Neither party provides a summary of the evidence at trial in their briefs. Both parties describe solely pieces of the evidence regarding Loranger's employment of unlicensed contractor(s) and minors. As the only issue raised by the Joneses on appeal is whether Loranger was unlicensed by virtue of section 7125.2, precluding his recovery and requiring disgorgement under section 7031, we provide only a brief summary of the parties' dispute for context.

him on several previous projects. Loranger did not check Houk's contractor's license before hiring him for the Joneses' project. He was unaware that Houk's contractor's license had expired. The trial court took judicial notice of a certified document from the Contractors State License Board showing Houk's license had expired in 1993.

When the Joneses chose to upgrade to flagstone flooring in the house, Loranger added support to the subfloor to handle the extra weight. Loranger's 13-year-old son and his son's teenage friend helped Loranger with the work. Loranger testified neither his son nor his son's friend had a work permit.

John Larsen, a retired electrician, testified Loranger hired him to do some dirt excavation with a backhoe on the Joneses' property. Larsen did not have a contractor's license.

Loranger testified he has a workers' compensation policy with SCIF for his construction employees.[3] It was in effect at the time of the construction of the Joneses' residence. Loranger testified he understood his obligation to report to SCIF the wages earned by his employees while they were working on the Joneses' property and that he did so to the best of his knowledge, although he was uncertain if he reported the wages of his son and his son's friend. He understood he did not need to carry workers' compensation for casual labor, which he thought was an employee who was paid less than $400. He believed he was current on all of his workers' compensation obligations. He filed monthly reports and has been audited by SCIF yearly. He has never been notified of a problem with his filings.

At the close of Loranger's case-in-chief, the Joneses filed a written motion for directed verdict. Citing *Wright, supra*, 149 Cal.App.4th 1116, the Joneses argued judgment should be entered in favor of them and against Loranger, plus Loranger should be ordered to disgorge all monies the Joneses paid to him, based on the following reasoning: (1) Loranger hired unlicensed subcontractors (primarily referring to Houk); (2) such subcontractors were de facto employees by virtue of Labor Code section 2750.5; (3) Loranger did not provide workers' compensation coverage to these subcontractor/employees; (4) such failure resulted in the suspension of Loranger's contractor's license under section 7125.2; and (5) without a license, Loranger could not recover for his construction services and had to disgorge all money paid to him under

---

[3] Loranger identified a copy of his policy during his testimony and it was marked as an exhibit, but his counsel withdrew the exhibit when the trial court sought to clarify if it had been admitted into evidence.

section 7031. The trial court reserved ruling on the motion and asked Loranger to supply a written response before trial resumed.

Loranger filed a written brief on the *Wright* issues.[4] Complaining the issue was never raised in the pleadings, at mediation, or at any time until the second day of trial, Loranger nevertheless argued *Wright, supra,* 149 Cal.App.4th 1116, did not apply to this case because, regardless of whether Houk was licensed, Houk was covered by Loranger's workers' compensation insurance policy. In support of this conclusion, Loranger attached to his brief portions of a transcript of a deposition of the underwriting manager for SCIF, Rob Getzinger, taken by Loranger during the break in the trial. Loranger did not ask to reopen his case to allow Getzinger to testify or otherwise admit the evidence.

The Joneses' motion for directed verdict was argued to the court when trial resumed. The trial court concluded there were not sufficient grounds for the motion at this point because Loranger had testified he was licensed and insured. (7 Witkin, Cal. Procedure (5th ed. 2008) Trial, § 421, p. 495 [in ruling on motion for directed verdict, court applies same test as for nonsuit, disregarding conflicting evidence, giving plaintiff's evidence all the value to which it is legally entitled, including every legitimate inference, and denying the motion if substantial evidence supports a verdict in plaintiff's favor].) The trial court denied the motion for directed verdict, noting the issue was still active for trial.[5] The Joneses moved to amend their pleadings according to proof to include an action for disgorgement under section 7031, subdivision (b). The trial court reserved ruling until the conclusion of trial.

---

[4] Loranger has filed a motion for order correcting respondent's appendix seeking to delete one of the pages of his written brief and substitute for it a different page. (Cal. Rules of Court, rule 8.155(c)(1) [further references to rules are to the California Rules of Court].) Loranger's counsel declares the page in the trial court's file and copied in respondent's appendix was an erroneously faxed page. He seeks to include in our record the page that should have been faxed to the trial court. We will not order "correction" of our appellate record to include material that was not before the trial court. Loranger's motion is denied.

[5] Buried at the end of the *three-page* "conclusion" of the Joneses' opening brief and mentioned again in passing in the first section of the Joneses' reply brief, the Joneses note that after the trial court denied their motion for directed verdict, it quashed their subpoena for the W-2 records and work permits of Loranger's workers. What the Joneses do not note is that the trial court did so on the basis that sufficient good cause was not stated in their subpoena. The subpoena is not in the record before us. Any claim that the trial court erred is forfeited for the Joneses' failure to support such claim with an adequate record and legal argument under a separate heading. (*Maria P. v. Riles* (1987) 43 Cal.3d 1281, 1295 [240 Cal.Rptr. 872, 743 P.2d 932]; *In re S.C.* (2006) 138 Cal.App.4th 396, 408 [41 Cal.Rptr.3d 453]; *Hernandez v. California Hospital Medical Center* (2000) 78 Cal.App.4th 498, 502 [93 Cal.Rptr.2d 97].)

The testimony and evidence admitted thereafter did not add anything new regarding the issue of Loranger's license, use of unlicensed contractors, or his workers' compensation coverage.

At the end of the trial, Loranger requested the trial court admit the deposition transcript of Getzinger that had been lodged with the clerk, specifically the portions of the deposition and attachments that had been submitted as part of Loranger's written response to the Joneses' motion for directed verdict. Loranger took the position the material was a public record. The Joneses refused to stipulate that the court could consider the documents and objected to their admission into evidence. The trial court excluded the evidence because Loranger had not called any witness to testify regarding them.[6]

## C. *The Trial Court's Decision*

The trial court issued a statement of decision at the request of the parties. The trial court found the Joneses owed $5,674.85 to Loranger on Loranger's breach of contract cause of action. The trial court awarded Loranger $23,939 on his quantum meruit claim. The court denied Loranger's claim for fraud and for prejudgment interest. The court awarded the Joneses $4,265 on their cross-complaint for the punch list of items that needed to be completed. However, the trial court refused to award any damages to the Joneses for structural damage to their house. The court found that it was unknown if the cracks will cause any further damage to the house and that Loranger poured the foundation in accordance with the plans provided by the Joneses.

With respect to the Joneses' request to amend their pleadings according to proof to add a claim for disgorgement under section 7031, the trial court distinguished *Wright, supra,* 149 Cal.App.4th 1116. The court stated that

---

[6] Loranger does not argue on appeal that the trial court erred in excluding the Getzinger evidence. He fails to even acknowledge the trial court did so. Instead, Loranger has filed a motion for judicial notice on appeal, citing Evidence Code sections 452, subdivisions (c), (g) and (h) and 459, subdivision (a), requesting this court simply judicially notice the Getzinger deposition, which he contends describes official acts or practices of California's Contractors State License Board and SCIF when subcontractors are alleged to be unlicensed. Loranger claims the trial court considered excerpts of the deposition that were attached to his brief filed in response to the Joneses' motion for directed verdict at trial.

Loranger has not followed the applicable rule to have the Getzinger deposition transmitted to this court (rule 8.224); the trial court did not admit the deposition into evidence or rely on the excerpts of Getzinger's deposition attached to Loranger's brief for its ruling on the Joneses' motion for directed verdict; Loranger's motion is inappropriate as a method of evading the trial court's later evidentiary ruling, which on this record appears to have been correct; and as best we can tell, the deposition is not a proper subject for judicial notice under Evidence Code section 452. Loranger's motion is denied.

"here there was insufficient evidence to prove that Loranger was an unlicensed contractor. Loranger testified he was a licensed contractor and had workers' compensation insurance. There was insufficient evidence presented to show that any unlicensed worker on the Jones[es'] construction project was not covered under Loranger's worker's [*sic*] compensation insurance, or another contractor's insurance. And, there was no evidence to show that Loranger failed to list any required wages on his worker's [*sic*] compensation insurance for any unlicensed contractor. Therefore, even if the Court allowed the amendment, the Court denies Jones[es]' claim for disgorgement."

The court entered judgment in favor of Loranger in the net amount of $25,348.85.

## DISCUSSION

■ "To protect the public, the Contractors' State License Law (CSLL; Bus. & Prof. Code, § 7000 et seq.) imposes strict and harsh penalties for a contractor's failure to maintain proper licensure. Among other things, the CSLL states a general rule that, regardless of the merits of the claim, a contractor may not maintain any action, legal or equitable, to recover compensation for 'the performance of any act or contract' unless he or she was duly licensed '*at all times* during the performance of that *act or contract*.'" (*MW Erectors, Inc. v. Niederhauser Ornamental & Metal Works Co., Inc.* (2005) 36 Cal.4th 412, 418 [30 Cal.Rptr.3d 755, 115 P.3d 41], fn. omitted, quoting § 7031, subd. (a); accord, *Hydrotech Systems, Ltd. v. Oasis Waterpark* (1991) 52 Cal.3d 988, 994–997 [277 Cal.Rptr. 517, 803 P.2d 370].) This has been referred to as the "shield" of the Contractors' State License Law (CSLL; § 7000 et seq.). (*White v. Cridlebaugh* (2009) 178 Cal.App.4th 506, 518 [100 Cal.Rptr.3d 434].) The CSLL also contains a "sword" in subdivision (b) of section 7031. (*White v. Cridlebaugh, supra*, at p. 519.) Section 7031, subdivision (b), authorizes a person who utilizes the services of an unlicensed contractor to bring an action to recover *all* compensation paid to the contractor for his/her work. (*White v. Cridlebaugh, supra*, at pp. 520–521 [§ 7031, subd. (b) requires unlicensed contractors "to return all compensation received without reductions or offsets for the value of material or services provided"].)

The Joneses claim the trial court's decision here does not give effect to these provisions. The Joneses claim their "entire argument on appeal is that [Loranger's] use of unlicensed workers and minor labor suspended [Loranger's] license during construction and forfeited [Loranger's] right to maintain an action for compensation. Further, [Loranger's] conduct entitles [the Joneses] to

the remedy of disgorgement." The Joneses rely, for this argument, on section 7125.2 as interpreted by *Wright, supra*, 149 Cal.App.4th 1116.

In *Wright*, the reviewing court accepted the following facts from the trial court's statement of decision: "Plaintiff worked on defendants' home during a four-month period in 2004. In June, he paid a crew of three to five employees approximately $15,000 for approximately 4,000 man hours. State Compensation Insurance Fund records for November 2003 through August 2004 show that plaintiff reported, under penalty of perjury, a payroll of $312 while having an actual payroll of $135,000. They show that plaintiff reported zero or next to zero payroll for every payroll period between his initial application for workers' compensation insurance in May 2002 and the end of 2004. Plaintiff's underreporting was not inadvertent. It was his pattern and practice from the first moment he applied for workers' compensation insurance." (*Wright, supra*, 149 Cal.App.4th at p. 1119.)

The court in *Wright* then considered the language of section 7125.2, which provides in pertinent part as follows:

"The failure of a licensee to obtain or maintain workers' compensation insurance coverage, if required under this chapter, shall result in the automatic suspension of the license by operation of law in accordance with the provisions of this section . . . .

"(a) The license suspension imposed by this section is effective upon the earlier of either of the following:

"(1) On the date that the relevant workers' compensation insurance coverage lapses.

"(2) On the date that workers' compensation coverage is required to be obtained.

"(b) A licensee who is subject to suspension under paragraph (1) of subdivision (a) shall be provided a notice by the registrar that includes all of the following:

"(1) The reason for the license suspension and the effective date.

"(2) A statement informing the licensee that a pending suspension will be posted to the license record for not more than 45 days prior to the posting of any license suspension periods required under this article.

"(3) The procedures required to reinstate the license." (§ 7125.2, subds. (a) & (b).)

The court in *Wright* summarized the portion of section 7125.2 relevant to the facts before it as providing "a contractor's license is automatically suspended as of the date the contractor was required to obtain workers' compensation insurance but did not." (*Wright, supra*, 149 Cal.App.4th at p. 1121.) The language of section 7125.2 "cannot be clearer. Its effect is that, because plaintiff underreported his payroll and, thus, did not obtain workers' compensation insurance in 2004, plaintiff's license was suspended before, during, and after he performed work on defendants' home." (*Wright, supra*, at p. 1121.)

The court went on to reject the plaintiff's claim that he had a valid contractor's license, despite his lack of workers' compensation coverage, because he never received a registrar's notice pursuant to section 7125.2, subdivision (b). (*Wright, supra*, 149 Cal.App.4th at pp. 1121–1122.) Not only did the plaintiff's argument fail because he did not meet his burden to prove lack of notice, it was wrong on the merits. (*Id.* at p. 1122.) Under the language of section 7125.2, a contractor whose license is subject to suspension for allowing his or her workers' compensation insurance to *lapse* is entitled to notice prior to the suspension of his or her license; but a contractor whose license is subject to suspension for failing to *obtain* workers' compensation insurance is subject to automatic suspension without notice. (*Wright, supra*, at p. 1122.) The court stated that "[a] case about underreporting payroll is, by definition, a failure-to-obtain case rather than a failure-to-maintain case. [Fn. omitted.]" (*Ibid.*)

In this case, the Joneses emphasize the evidence that Houk was an unlicensed contractor. The Joneses note Labor Code section 2750.5 establishes a "rebuttable presumption affecting the burden of proof that a worker performing services for which a license is required . . . is an employee rather than an independent contractor." (Lab. Code, § 2750.5.) The Joneses also note the uncontradicted evidence that Larsen and the minor children working on the construction of the Joneses' house were unlicensed employees of Loranger.[7] The Joneses then suggest that "[i]t goes without saying, that a contractor who uses minors without work permits cannot claim that he reported their wages to [SCIF]." Moreover, since Loranger believed Houk to

---

[7] In light of this evidence, the Joneses claim the trial court erroneously found in its statement of decision there was insufficient evidence of unlicensed work. The Joneses contend the evidence showed Loranger had a pattern and practice of employing unlicensed workers. Actually, the trial court did not find that there was no evidence of unlicensed work, but that there was no evidence any unlicensed worker was not covered by Loranger's insurance. The trial court's finding correctly addressed the issue under section 7125.2, which is whether the contractor failed to obtain or maintain workers' compensation insurance coverage for his/her employees, not whether there are unlicensed employees.

be licensed, the Joneses argue it should be obvious Loranger would not have reported any wages for Houk's work to SCIF. As Loranger did not report these workers' wages to SCIF, the Joneses continue, Loranger's license was automatically suspended under *Wright* triggering the penalties of section 7031. Finding *Wright* distinguishable from this case, we reject the Joneses' argument.

" 'It is the general rule that the language of an opinion must be construed with reference to the facts presented by the case, and the positive authority of a decision is coextensive only with such facts.' " (*Brown v. Kelly Broadcasting Co.* (1989) 48 Cal.3d 711, 734–735 [257 Cal.Rptr. 708, 771 P.2d 406], quoting *River Farms Co. v. Superior Court* (1933) 131 Cal.App. 365, 369 [21 P.2d 643].) In *Wright, supra,* 149 Cal.App.4th at page 1119, the limited facts before the court strongly suggest the contractor there did not have and never had a policy of workers' compensation insurance, that he intentionally underreported the wages he was paying (reporting zero or next to zero payroll), and that he did so to be excluded from the requirement of obtaining such insurance. (See § 7125, subd. (b); Lab. Code, § 3352, subd. (h); see generally *Heiman v. Workers' Comp. Appeals Bd.* (2007) 149 Cal.App.4th 724, 734–735 [57 Cal.Rptr.3d 56]; *Cedillo v. Workers' Comp. Appeals Bd.* (2003) 106 Cal.App.4th 227, 235–236 [130 Cal.Rptr.2d 581].) It is in this factual context that we understand the language of the opinion that "underreporting payroll is, by definition, a failure-to-obtain case . . . ." (*Wright, supra,* at p. 1122.) The facts before the court in *Wright* are not the facts of the case before us.

Further, to the extent *Wright* can be read more broadly, we state our disagreement with the application of its reasoning to conclude that "any" underreporting of payroll is a failure to "obtain" workers' compensation insurance even though the contractor has in effect a policy of workers' compensation insurance covering his/her employees.[8] Other than the implication in *Wright, supra,* 149 Cal.App.4th at page 1122 and footnote 2, we neither have been cited to nor have we found any authority for the proposition that a worker found to be an employee of a contractor (by virtue of Lab. Code, § 2750.5 or otherwise) will not be covered by the contractor's existing workers' compensation insurance policy if there is any discrepancy in the

---

[8] Section 7125.2 separately provides for the automatic suspension of the license of a contractor who fails to "maintain" workers' compensation coverage, but such suspension is effective on the date that coverage lapses (§ 7125.2, subd. (a)(1); *Wright, supra,* 149 Cal.App.4th at p. 1122) and requires notice by the registrar. (§ 7125.2, subd. (b).) A reasonable inference from Loranger's testimony that he had a policy of workers' compensation in effect and had never been notified of any problems with his filings with SCIF is that he never received notice of a pending suspension of his license due to his failure to "maintain" workers' compensation insurance for all of his employees as required under section 7125.2.

contractor's reporting of payroll. In the absence of any legal authority or evidence supporting such a conclusion, we will not reach it.

■ Here, Loranger specifically testified he had a policy of workers' compensation coverage in effect for his construction employees during the period of construction of the Joneses' home. We conclude this evidence was sufficient to meet Loranger's burden of proof to show his license was not suspended for failing to *obtain* workers' compensation insurance coverage pursuant to section 7125.2. The trial court correctly denied the Joneses' claim for the sanctions provided by section 7031.

■ The Joneses argue, however, that the decision of the trial court to deny section 7031 sanctions was reached only because the trial court "throughout the trial and as stated in the trial court's statement of decision," improperly shifted the burden of proof from Loranger to the Joneses.[9] We disagree. First, the Joneses do not support, by references to the record, their claim that the burden was improperly placed on them at trial. Our review of the reporter's transcript does not convince us it was. Second, we understand the statement of decision to reflect the trial court found Loranger met his burden of proof of his licensure and that there was insufficient evidence to contradict his testimony. Finally, we reject the Joneses' argument that Loranger had the burden to prove all wages were accurately reported for his "de facto employees." It was Loranger's burden to prove his licensure (§ 7031, subd. (d)), which under section 7125.2 requires proof that workers' compensation insurance coverage was obtained and maintained for the duration of the construction work. Loranger did not have to prove the amount of wages he paid each employee (de facto or otherwise) and match those wages to his reports to SCIF.

---

[9] The Joneses improperly make this argument under the heading "Conclusion." (Some capitalization omitted.) Such heading does not meet the requirement of rule 8.204(a)(1)(B) to "[s]tate each point under a separate heading or subheading summarizing the point . . . ." In fact, none of the Joneses' headings ("Legal Argument," "Introduction," "Statutory Analysis," "Case Analysis") meet this requirement. We note such failure adds to the effort this court must undertake to understand what arguments are being raised, particularly given the Joneses' express identification of their "entire argument." To the extent the Joneses make any other claims we have not identified, we reject them as forfeited for failure to be properly briefed. (*Opdyk v. California Horse Racing Bd.* (1995) 34 Cal.App.4th 1826, 1830–1831, fn. 4 [41 Cal.Rptr.2d 263]; see *People v. Harper* (2000) 82 Cal.App.4th 1413, 1419, fn. 4 [98 Cal.Rptr.2d 894].) To the extent any of the arguments in their reply brief raise separate issues, we do not find good cause for the Joneses' failure to raise them in an adequate fashion in their opening brief. (*In re Marriage of Ackerman* (2006) 146 Cal.App.4th 191, 214 [52 Cal.Rptr.3d 744]; *Neighbours v. Buzz Oates Enterprises* (1990) 217 Cal.App.3d 325, 335, fn. 8 [265 Cal.Rptr. 788] [appellant cannot raise new grounds for reversal for the first time in a reply brief].)

## DISPOSITION

The judgment is affirmed. Costs on appeal are awarded to respondent. (Cal. Rules of Court, rule 8.278(a)(1) & (2).)

Scotland, P. J., and Hull, J., concurred.