Filed 12/4/15  P. v. Garber CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Shasta)

----

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>BART ALLAN GARBER,<br><br>    Defendant and Appellant. | C078547<br><br>(Super. Ct. No. 14F2469) |

A jury found defendant Bart Allan Garber guilty of one count of assault with a deadly weapon.  (Pen. Code, § 245, subd. (a)(1).)[1]  In a bifurcated proceeding, the trial court found true the special allegations that defendant had suffered two prior strike convictions (§§ 1170.12, 667, subds. (b)-(i)), a prior serious felony conviction (§ 667, subd. (a)), and had served a prior prison term (§ 667.5, subd. (b)).  Defendant was

---

[1]  Undesignated statutory references are to the Penal Code.

1

sentenced to an indeterminate term of 25 years to life for assault with a deadly weapon, plus six years consecutive for the prior serious felony and prior prison term.

On appeal, defendant contends: (1) the one-year prior prison term enhancement must be stricken; (2) the trial court erred by failing to conduct an adequate inquiry into his various allegations made at the hearing and by failing to appoint new counsel to assist him in bringing a motion for new trial; and (3) the restitution and parole revocation fines must be reversed and stricken. We will modify the sentence and otherwise affirm.

## BACKGROUND

*The Information*

On June 25, 2014, an information was filed in the Shasta County Superior Court, charging defendant with one count of assault with a deadly weapon. (§ 245, subd. (a)(1).) The information also alleged that defendant had two prior strike convictions (§ 1170.12), a serious prior felony conviction (§ 667, subd. (a)), and had served a prior prison term (§ 667.5, subd. (b)).

*Evidence at Trial*

On April 26, 2014, Roland Loewen, a truck driver, was making a delivery to Moores' Flour Mill in Redding when he observed a pickup truck parked within six to eight feet of him. The victim, referred to in the record as Jane Doe, was inside the truck while defendant was in the bed of the truck "jerking wildly" on the handle of a piece of luggage. After the victim got out of the truck and retrieved her luggage, defendant drove his truck around a building. Finding the situation unusual, Loewen got out of his truck and walked around the building. When he arrived on the other side, he saw defendant and the victim arguing. Defendant gave the victim what appeared to be a CD case and she "flung it out onto the pavement and kind of walked away." Not wanting anything to do with the situation, Loewen walked back to his truck.

While sitting in his truck, Loewen noticed that defendant had moved his truck near the southwest corner of the lot behind the mill. He then saw defendant reach into his

2

truck and pull out a steel crowbar. Shortly thereafter, Loewen saw the victim run away from defendant and defendant use the crowbar to smash the side of his truck. Loewen testified that he did not see defendant strike *the victim* with the crowbar, explaining that defendant's truck blocked his view of defendant and the victim.

Loewen called 911. The victim also called 911. She told the 911 operator that she needed a police officer because she "just got beat." When the operator asked her about what had happened, the victim responded, "Bart Garber." The victim told the operator that she had been attempting to catch a bus, but defendant had taken her ticket. She then described defendant's truck and told the operator: "He beat on me, really bad." She explained that defendant had taken her purse and hit her with a crowbar. While the victim complained about pain in her wrist, she told the operator that she did not need an ambulance.

Redding Police Officer Peggy Porter responded to the mill and made contact with the victim, who was upset and crying. The victim complained to Porter about pain in her arm. She explained to Porter that defendant had driven her to the mill to catch a bus, they had argued, she threw some CDs out of defendant's truck that defendant believed to be his, and defendant hit her in the back with a crowbar three times. At her request, Porter drove the victim to the Shasta Regional Medical Center.

Later that same day, defendant was arrested by Redding Police Officer Rebecca Zufall. Zufall searched defendant's truck and found a crowbar behind the driver's seat. She took the crowbar to the hospital, and the victim identified it as the object that defendant had used to hit her.

At trial, the victim stated that defendant was her fiancé and that she was pregnant with his child. She testified that she got into an argument with defendant at the mill but defendant did *not* hit her with a crowbar. The victim also testified that she did not remember telling the 911 operator that defendant hit her with a crowbar. According to the victim, her injuries were the result of a fall and bumping into a wall the night before

3

the incident with defendant. She claimed to be "accident prone," and stated that she fell down a lot. The victim also claimed to be bipolar and to suffer from manic depression. She testified that she was on medication at the time of the incident, which caused her to hallucinate and believe things happened that did not. The victim described the hallucinations as "[v]ery schizophrenic," and noted that schizophrenia runs in her family. She claimed that she was hallucinating when she told the 911 operator that defendant hit her with a crowbar.

The victim's sister, Wendie Carroll, testified that the victim told her she had been struck by defendant multiple times with a crowbar, causing her to suffer a broken wrist and broken ribs. Carroll stated that the victim was in excruciating pain on the night of the incident; she was holding her ribs and arm and complaining that it was hard for her to breathe. Carroll also stated that the victim later changed her story, claiming her injuries were the result of falling off a coffee table.

Photographs documenting the victim's injuries were admitted into evidence. Porter testified that the injuries were fresh and consistent with being hit by a crowbar.

Defendant did not call any witnesses at trial or present any evidence in his defense other than through cross-examination of the People's witnesses.

*Verdict and Sentencing*

On August 21, 2014, the jury found defendant guilty of one count of assault with a deadly weapon. (§ 245, subd. (a)(1).) In a bifurcated proceeding, the trial court found true the special allegations that defendant had two prior strike convictions (§ 1170.12), a prior serious felony conviction (§ 667, subd. (a)(1)), and had served a prior prison term (§ 667.5, subd. (b)).

On January 30, 2015, the trial court denied defendant's motion for new trial and sentenced him to 25 years to life in prison for assault with a deadly weapon, plus five years for the prior serious felony conviction and one year for the prior prison term. Defendant filed a timely notice of appeal.

4

## DISCUSSION

### I

### *Dual Use of Enhancements*

Defendant first contends that the trial court erred by imposing two enhancements based on the same prior conviction: (1) a prior serious felony enhancement under section 667, subdivision (a)(1); and (2) a prior prison term enhancement under section 667.5, subdivision (b). According to defendant, the one-year prior prison term enhancement imposed by the trial court should be stricken because it is contrary to *People v. Jones* (1993) 5 Cal.4th 1142 (*Jones*), as it constitutes a prohibited "dual use" of a single prior conviction. We disagree.

In *Jones*, the defendant had served three prior prison terms for felony convictions, one of which was for a serious felony conviction. (*Jones, supra*, 5 Cal.4th at p. 1145.) He received both a five-year serious felony enhancement under section 667 and a one-year prior prison term enhancement under section 667.5 based on the same prior serious felony conviction. (*Jones,* at p. 1145.) He challenged the imposition of two enhancements based on the same prior conviction. Our Supreme Court concluded that when multiple statutory enhancement provisions are available for the same prior offense, one of which is a section 667, subdivision (a) enhancement, only the greatest enhancement will apply. (*Jones,* at p. 1150.) Accordingly, the court held that the trial court improperly imposed a cumulative enhancement under both sections 667 and 667.5 based on a single prior felony offense and directed the trial court to strike the one-year prior prison term enhancement. (*Jones,* at pp. 1150-1153.)

Defendant's reliance on *Jones* is misplaced. In *Jones*, a single prior conviction underlay both enhancements. Here, both the prior prison term enhancement and the prior serious felony enhancement are founded on a single case that resulted in *two* convictions for lewd and lascivious acts upon a child under 14. (§ 288, subd. (a).) Because either conviction would provide a sufficient basis in and of itself to support either enhancement,

5

*Jones* is inapposite. (See *People v. Brandon* (1995) 32 Cal.App.4th 1033, 1055 [finding *Jones* inapposite where both the prior prison term enhancement and the prior serious felony enhancement referred to multiple offenses]; *People v. Wiley* (1994) 25 Cal.App.4th 159, 164 [*Jones* did not preclude imposition of a section 667, subdivision (a) enhancement based on two of three burglary counts and imposition of a section 667.5, subdivision (b) enhancement based on third burglary count where all three burglary counts had been charged in a single information and concurrent prison terms were imposed].) Since there is no evidence in the record of an improper dual use of enhancements, we find no error in the trial court's imposition of a one-year prior prison term enhancement under section 667.5, subdivision (b).

II

*Failure to Inquire and Appoint New Counsel*

Defendant next contends that the trial court erred by failing to conduct an adequate inquiry into his allegations of ineffective assistance of counsel and by failing to appoint new counsel to assist him in bringing a motion for new trial. In an undeveloped argument made without a separate heading in this same section of his brief, defendant adds that the trial court erred by denying his motion for a continuance to permit posttrial counsel to investigate his assertion that two Redding police officers observed and videotaped the encounter that led to his conviction.

These contentions arise from the following additional facts:

Defendant was represented at trial by Deputy Public Defender Timothy Prentiss. Beginning shortly after the jury rendered its verdict, defendant was represented by Deputy Public Defender Jeremy West. On January 29, 2015, West filed a motion for new trial based on newly discovered evidence. The written motion explained that the defense had "discover[ed] material evidence that could not have been produced at trial with reasonable diligence." (See § 1181, par. 8.) Although the final section of the written motion pointed out that a "new trial may be granted where the trial Court finds that the

6

defendant received ineffective assistance of counsel" and cryptically concluded, "[t]he Court is requested to make findings in this regard," no claim of ineffective assistance of counsel was made by the motion. Rather, the motion stressed that Prentiss *had not known* of this purported new evidence (of the victim's tendency to hurt herself in a myriad of ways and her lack of credibility), and Prentiss himself filed a declaration in support of defendant's motion stressing that he *was not told* about the possibility of presenting this potentially favorable testimony at trial. The motion was set for hearing on January 30, 2015, the same date as sentencing.

At the hearing, West voiced an "additional request" as soon as the hearing commenced, asking *for the first time* to continue the hearing because he had spoken with defendant earlier in the day and was told *for the first time* that defendant believed there were two eyewitnesses and a videotape that would exonerate him. In an unsworn informal conversation with the court that followed this oral request by West, defendant said that two Redding police officers witnessed and videotaped the incident giving rise to this case and could testify that he did not hit the victim with a crowbar. Defendant also claimed that he had known about these witnesses from the beginning, "[b]ecause I seen them there . . . and they came and told me," adding that he "tried to tell Mr. Prentiss, and he wouldn't listen to me."

The trial court denied West's request for a continuance, finding it highly unlikely that defendant was providing an accurate recitation of what occurred. In addition, the trial court denied defendant's motion for new trial, finding that defendant had not identified any newly discovered evidence. In doing so, the court stated, among other things, that defendant's claim regarding the existence of exculpatory evidence (in the form of several witnesses prepared to testify about the victim's tendency to hurt herself in a myriad of ways) was "uniquely within the defendant's knowledge" and not "newly discovered."

Defendant does not challenge the denial of his motion for new trial on appeal. Rather, he challenges the trial court's reaction to his eleventh hour oral assertion at the sentencing hearing that there were witnesses to his conduct about which he had tried and failed to discuss with his previous lawyer.

Although defendant argues on appeal that the court should have appointed new, "conflict-free counsel" to assist him with his new trial motion, he never requested new counsel in the trial court and he never raised a claim of conflict or even ineffective assistance of counsel in the trial court. His argument on appeal has nothing to do with what actually happened in the trial court. There, while defendant orally indicated to the trial court (for the first time at the hearing), that Prentiss "didn't listen to" him, defendant *never* indicated dissatisfaction with West--his then-current attorney--or a desire to replace West. He never claimed ineffective assistance of counsel, either through West or on his own. At no time did defendant claim dissatisfaction with Prentiss for not calling witnesses who would testify about the victim's self-abuse and lack of credibility--the subject of his new trial motion--rather, defendant submitted a declaration from Prentiss showing that Prentiss was never informed about the evidence.

Citing *People v. Bolin* (1998) 18 Cal.4th 297 at page 346, defendant points us to the obvious, that if a defendant asks the trial court to appoint new counsel to prepare a motion for new trial on grounds of ineffective assistance of counsel at trial, the court should hold a hearing and it may, in its discretion, appoint new counsel for defendant. But that request was not made in this case. Here, the new trial motion raised the claim of newly discovered evidence and did *not* assert that prior defense counsel lacked diligence in discovering it. The oral motion for a continuance requested time to investigate an entirely new and different claim of additional evidence, raised for the first time at the hearing by the defendant himself, accompanied by an assertion that his prior (not current) attorney "didn't listen to [him]" about it. The trial court did not err in declining to inquire further about this new claim, and certainly did not err in failing to sua sponte appoint a

8

new attorney for defendant (an appointment which we stress the court was never even asked to make by either defendant's current attorney or defendant himself during his colloquy with the court).

To the extent that defendant separately argues the trial court erred in denying him a continuance, because he does not head and argue this point separately, it is forfeited. (See *Loranger v. Jones* (2010) 184 Cal.App.4th 847, 858, fn. 9; *Utz v. Aureguy* (1952) 109 Cal.App.2d 803, 807-808.) In any event, defendant did not show good cause for such relief. (§ 1050, subd. (e).) He did not file written notice as required. (§ 1050, subd. (b).) He did not present any evidence supporting his outlandish, eleventh hour claim that two Redding police officers witnessed and videotaped the incident giving rise to this case. He did not explain why he waited until the date of sentencing--months after the jury rendered its verdict--to inform his current counsel or the trial court or *anyone* (other than Prentiss, who he said did not listen) about this evidence. There was no error. (Cf. *People v. Snow* (2003) 30 Cal.4th 43, 77, 92 [no abuse of discretion in denying continuance to investigate theory for new trial motion, where defendant had more than two months after verdict to investigate theory and no explanation of why records had not been investigated earlier].)

### III

### *Sentencing Errors*

Defendant contends that the restitution and parole revocation fines appearing in the abstract of judgment must be stricken. He argues the restitution fine was not orally imposed by the trial court, while the parole revocation fine can only be imposed in addition to, and in the same amount as, the restitution fine.

At the beginning of the sentencing hearing, the trial court stated that her tentative decision was to follow the recommendation of the probation department. As relevant here, the probation officer recommended the trial court impose a restitution fine under

section 1202.4 in the amount of $10,000 and an additional $10,000 "restitution fine" under section 1202.45, subdivision (a), suspended unless parole is revoked.

After orally pronouncing defendant's term of imprisonment, the trial court stated as follows:

"THE COURT: . . . There is an additional one thousand dollar restitution fine. I'm going to lower that to $300. That's ordered but suspended unless parole is revoked. Actually, I don't think I can. It has to match the original amount that was imposed. I don't know what his previous amount was.

"THE CLERK: There was no previous.

"THE COURT: So it is a three hundred dollar restitution fine suspended."

Neither the People nor defendant objected to this pronouncement. The resulting minute order stated that "defendant shall pay a restitution fine of $300.00 pursuant to Penal Code Section 1202.4," and "an additional restitution fine in the amount of $300.00, which shall be SUSPENDED unless defendant's parole is revoked, pursuant to Penal Code Section 1202.45." These fines also appear in the abstract of judgment.

"Under subdivision (b) of Penal Code section 1202.4, a trial court *must* impose 'a separate and additional restitution fine' as part of the judgment of conviction entered against a criminal defendant, 'unless it finds compelling and extraordinary reasons for not doing so, and states those reasons on the record.' If the 'sentence includes a period of parole,' then the court must also impose a parole revocation fine 'in the same amount as that imposed pursuant to subdivision (b) of Section 1202.4.' " (*People v. Smith* (2001) 24 Cal.4th 849, 851, fn. omitted.) The parole revocation fine, however, is automatically suspended unless the trial court later revokes parole. (*Ibid.*)

Contrary to defendant's contention, the trial court did not fail to orally impose a restitution fine. The record reflects that the trial court orally imposed and "suspended" a "restitution fine" in the amount of $300. However, there is no statutory authority which

10

allows a trial court to stay a restitution fine imposed under section 1202.4, subdivision (b). (*People v. Woods* (2010) 191 Cal.App.4th 269, 272-273.)

The People suggest that the trial court "intended to impose (rather than to illogically suspend) a $300 restitution fine, as well as a matching $300.00 parole revocation restitution fine." In support of its position, the People reason that the parole revocation fine is "routinely suspended per the statute"-- i.e., section 1202.45, subdivision (c). While this may have been the trial court's intention, a plain reading of the reporter's transcript does not support such a determination. Nothing in trial court's oral pronouncement of sentence supports the conclusion that the trial court ordered a $300 restitution fine under section 1202.4, subdivision (b) *and* a $300 parole revocation fine under section 1202.45, subdivision (a).

Nor does the record support defendant's contention that the trial court only imposed a parole revocation fine under section 1202.45, subdivision (a). The transcript simply reflects that the trial court orally imposed a "three hundred dollar restitution fine suspended." Moreover, the trial court's stated "tentative" decision, as well as the court's minute order and the abstract of judgment, do not support such a determination.

The imposition and suspension of restitution fine under section 1202.4, subdivision (b), and failure to impose the mandatory parole revocation fine under section 1202.45, subdivision (a) resulted in an unauthorized sentence. (See *People v. Woods, supra*, 191 Cal.App.4th at p. 273 [when the court imposes and stays a restitution fine, it acts "in excess of the court's jurisdiction, [and the order] must be set aside"]; *People v. Rodriguez* (2000) 80 Cal.App.4th 372, 378 [where the trial court imposes a restitution fine under § 1202.4, its omission of a concomitant, mandatory parole revocation fine under § 1202.45 in the same amount results in an unauthorized sentence].) The clerk's attempt to correct the trial court's errors is ineffectual, because any discrepancy between the oral pronouncement of judgment and the court's minute order and the abstract of

11

judgment is resolved in favor of the oral pronouncement.  (*People v. Farell* (2002) 28 Cal.4th 381, 384, fn. 2; *People v. Zackery* (2007) 147 Cal.App.4th 380, 387-388.)

We shall modify the judgment to strike the order suspending the restitution fine, leaving the order imposing the $300 restitution fine intact, and impose a $300 parole revocation fine, which is suspended unless parole is revoked.  (See *People v. Rodriguez*, *supra*, 80 Cal.App.4th at p. 378 [failure to impose a parole revocation fine in the same amount as the restitution fine is an unauthorized sentence which may be corrected for the first time on appeal].)  Because as we have described *ante* the abstract of judgment already includes these modifications, it need not be amended.

## DISPOSITION

The judgment is modified to strike the order suspending the restitution fine and impose and stay a $300 parole revocation fine as described in this opinion.  As modified, the judgment is affirmed.

_____/s/_____

Duarte, J.

We concur:

_____/s/_____

Raye, P. J.

_____/s/_____

Blease, J.

12