Filed 6/28/13  Rao v. Washington Township Health Care Dist. CA1/5

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| **RAMINENI V. RAO,** | |
| **Plaintiff and Appellant,** | **A134623** |
| **v.** | |
| **WASHINGTON TOWNSHIP HEALTH CARE DISTRICT,** | **(Alameda County Super. Ct. No. HG10540985)** |
| **Defendant and Respondent.** | |

1

Defendant and respondent Washington Township Health Care District (respondent), which operates Washington Hospital, terminated the medical staff membership and hospital privileges of plaintiff and appellant Ramineni V. Rao, M.D. (appellant), a surgeon. Appellant appeals from the superior court's order denying his petition for writ of mandate seeking reinstatement of his privileges. (Code Civ. Proc., § 1094.5.) We reverse and remand with instructions that the superior court issue a writ of mandate directing respondent to provide appellant an opportunity to present argument whether the findings reached following his peer review hearings justified revocation of his privileges.

BACKGROUND

Washington Hospital is located in Fremont. The hospital is governed by a Board of Directors (Board) and has a medical staff responsible for the quality of the medical care rendered to patients in the hospital.

Appellant is a surgeon who was on the medical staff of Washington Hospital until revocation of his staff membership and hospital privileges in 2010.

The peer review process involving appellant began in 2002. That year, Washington Hospital's Department of Anesthesia forwarded concerns to the Department of Surgery regarding appellant's competence. This resulted in an investigation, and over the next four years several investigations were conducted by a committee within the hospital and by independent investigative bodies. The reviews raised concerns about appellant's medical competence and behavior.

On September 25, 2006, Washington Hospital's Medical Executive Committee (MEC), the governing body of the medical staff, notified appellant that it proposed corrective action be taken against him. The MEC informed appellant his behavior was deemed to be "unprofessional, extremely disruptive of medical staff and hospital operations, and it can adversely impact the provision of quality patient care." The MEC recommended, among other things, restriction of 14 specific surgical privileges and institution of a progressive discipline process. The MEC stated, "[b]y restricting your practice to those areas where you are clearly competent, patients will be protected."

2

Appellant requested a hearing on the proposed actions. An attorney hearing officer was selected and a Judicial Review Committee (JRC) consisting of four physicians was empanelled to hear the evidence and render a decision in accordance with the procedures set forth in article VII of the October 2005 Washington Hospital Medical Staff Bylaws, Policies and Procedures (Bylaws). Appellant was initially represented by counsel, but he subsequently represented himself and sought to prevent the representation of the MEC by counsel. The hearing officer permitted the MEC to be represented by counsel in some sessions.

On February 8, 2007, the MEC sent appellant a supplemental notice of charges. Among other things, the notice charged that "certain tendencies in [appellant's] patient care decision making adversely affect patient care or create an unacceptably high risk of adverse impact on patient care." It also alleged that appellant was "practic[ing] at or beyond the outer limits of [his] competence and unnecessarily expos[ing] [his] patients to an increased risk of adverse outcome." The notice revised the list of restrictions in the September 2006 notice, but it still contemplated appellant's continued practice at Washington Hospital.

The evidentiary hearings before the JRC began February 19, 2008, and ended on April 20, 2009. At the end of the summer of 2008, it became known that appellant was interviewed in a documentary film (called "Life for Sale") critical of Washington Hospital and the practice of one of the members of the JRC. On September 10, 2008, the JRC members were voir dired regarding any potential bias due to the documentary. Appellant objected to the continued participation of the JRC member whose practice was criticized in the documentary and that person was excused from further participation in the matter.

The parties submitted written closing statements, followed by oral closing statements on July 20, 2009. In September 2009, the JRC issued a 29-page decision. The JRC concluded the MEC's charges were supported by a preponderance of the evidence and the MEC's proposed clinical limitations and monitoring program involving

3

progressive discipline were reasonable and warranted. However, the JRC also expressed reservations about the likely effectiveness of that recommended plan of corrective action.

Appellant appealed the JRC decision to the Board, in accordance with Bylaws Section 7.5. The Board delegated its responsibilities to an appellate hearing officer under Bylaws Section 5.c. Both parties submitted lengthy written appellate briefs. An appellate hearing took place in May 2010; appellant appeared with legal counsel. The appellate hearing officer submitted a report and recommendation to the Board. He told the Board it was "not constrained simply to endorse the actions that were upheld by the JRC as the final actions of the Hospital." However, he noted that, if the Board were inclined to impose more severe corrective action, both the MEC and appellant should be given the opportunity for further comment.

On June 11, 2010, the Board found the JRC's decision was supported by substantial evidence, but it nevertheless remanded the matter back to the JRC, expressing concern that the MEC's recommended actions did not adequately protect the patients at Washington Hospital. The Board directed the JRC to reconsider "whether the MEC's recommended restrictions to [appellant's] surgical privileges . . . are feasible and reasonable," "whether [appellant's] completion of an 'anger management' course is reasonable and warranted in light of the evidence in the entire record," "whether the MEC's described behavioral program . . . is a sufficient disciplinary measure and whether substantial evidence in the record supports a more severe measure," and "whether [appellant's] Medical Staff membership and all clinical privileges should be revoked." The Board also directed the JRC to "provide [appellant] and the MEC with notice of the issues on remand and a reasonable opportunity to respond to them and be heard."

On remand, the JRC requested briefing from the parties solely on the question of whether the JRC had the power to recommend disciplinary action different from what the MEC initially recommended. Appellant requested an opportunity to present evidence and argument on the appropriateness of revocation of his privileges, but the JRC "concluded there was no need for further hearing sessions or receipt of additional evidence or argument with respect to the questions presented."

The JRC issued a supplemental decision responding to the Board's inquiries. The JRC stated its initial decision "made it clear the criteria of 'reasonable and warranted' did not mean there was only one best or perfect answer, but allowed for . . . rational choices among a range of reasonable options." Among other things, the JRC decided the originally proposed surgical restrictions were "not likely to operate in a smooth and congenial and efficient manner, and that it is likely to lead to more conflict and animosity, impose undue costs and burdens, and potentially lead to adverse impacts on the delivery of prompt needed care to patients." The JRC concluded, "the facts determined at the hearing indicate the corrective action proposed by the MEC is not sufficient to redress the professional and behavioral concerns generated by [appellant]. After months of hearings, volumes of documentary evidence, and the opportunity to personally evaluate the testimony of scores of witnesses, and most especially that of [appellant], the JRC unanimously states its conclusion and recommendation that the facts warrant revocation of [appellant's] Medical Staff clinical privileges and membership at Washington Hospital."

On July 12, 2010, after considering the supplemental JRC decision, the Board revoked appellant's medical staff membership and hospital privileges.

In the meantime, in November 2008, the MEC initiated a second disciplinary proceeding against appellant (Rao II). The MEC sought termination of appellant's medical staff membership and hospital privileges. The MEC alleged, among other things, that, in participating in the "Life for Sale" documentary, appellant disclosed patient information and misrepresented the peer review process. Appellant requested a hearing, a separate JRC was empanelled, and hearing sessions took place from October 2009 through June 2010. Appellant contended the Rao II charges were illegal retaliation for his participation in the documentary. In light of the July 2010 revocation of appellant's membership and privileges, the JRC declined to issue a final decision on the charges and proposed action in Rao II. However, the JRC did leave open the possibility of issuing a decision "if and when: (a) the JRC determines it is appropriate to do so; or

5

(b) the MEC and [appellant] both join in the Board's request [for issuance of a final decision]; or (c) the JRC is ordered to do so by a court of competent jurisdiction."

In October 2010, appellant filed a petition seeking issuance of a writ of administrative mandate directing the Board to set aside its July 2010 revocation of his membership and privileges. (Code Civ. Proc., § 1094.5.) He also requested termination of the Rao II proceedings. The superior court denied the petition. This appeal followed.[1]

DISCUSSION

Appellant argues a writ of mandate must issue because: (1) the Board exceeded its authority in rejecting the decision of the JRC; (2) appellant was not provided notice the peer review proceeding could result in revocation of his privileges; and (3) the MEC was represented by counsel at certain hearing sessions when he was not.[2] We agree appellant should have been provided an opportunity to address the appropriateness of revoking his privileges, but otherwise reject his claims.

I. *Hospital Peer Review*

"California has enacted a comprehensive statutory scheme governing hospital peer review. [Citations.] The purpose of peer review is 'to protect the health and welfare of the people of California by excluding through the peer review mechanism "those healing arts practitioners who provide substandard care or who engage in professional misconduct." ' [Citation.]" (*Ellison v. Sequoia Health Services* (2010) 183 Cal.App.4th 1486, 1494 (*Ellison*); Bus. & Prof. Code, § 809 et seq.; see also *El-Attar v. Hollywood Presbyterian Medical Center* (2013) ___ Cal.4th ___, ___ [2013 Cal.LEXIS 4697, pp. *13-*14] (*El-Attar*).) "A second purpose of the legislation, which is 'also if not equally important, is to protect competent practitioners from being barred from practice for

---

[1] This court granted leave to the Association of American Physicians & Surgeons, Inc., to file an amicus brief in favor of appellant. That brief was directed only to the contention that the Rao II proceedings violate appellant's rights under the First Amendment of the United States Constitution, which is an issue we need not and do not reach in the present decision.

[2] Appellant does not contend insufficient evidence supports the decision to revoke his privileges.

6

arbitrary or discriminatory reasons.' [Citation.]" (*El-Attar*, at p. ___ [2013 Cal.LEXIS 4697, p. *14].)

Washington Hospital is required to have "an organized medical staff responsible to the governing body for the adequacy and quality of the care rendered to patients." (Cal. Code Regs., tit. 22, § 70703, subd. (a).) The medical staff is required to adopt written bylaws establishing a process of peer review to deal with "staff applications and credentials, appointments, reappointments, assignment of clinical privileges, appeals mechanisms and such other subjects . . . ." (*Id.*, subd. (b).) The bylaws govern peer review proceedings, subject to the peer review statutes. (*Ellison*, *supra*, 183 Cal.App.4th at p. 1494.)

Under Washington Hospital's Bylaws, corrective action against a practitioner with clinical privileges may be initiated where the practitioner "engages in[,] makes[,] or exhibits acts, statements, demeanor or professional conduct . . . and the same is, or is reasonably likely to be detrimental to patient safety or to the delivery of quality patient care, disruptive to Hospital operations or an impairment to the community's confidence in the Hospital, or constitute fraud or abuse or does not abide by the Bylaws and Rules and Regulations of the Medical Staff or the Rules and Regulations of his/her Department . . . ." (Bylaws, art. VI, § 6.1-1.) At the conclusion of an investigation, the MEC may take various actions, including recommending restrictions on or revocation of clinical privileges or staff membership. (*Id*., art. VI, § 6.1-4.)

Where the MEC has recommended adverse action against a staff member— including, for example, "revocation of Medical Staff membership" or "denial, involuntary reduction, suspension, or termination of clinical privileges"—the practitioner must be provided notice in writing including "[a] description of the action or recommendation," information regarding the deadline to request a hearing, a summary of the member's rights at the hearing, and "[a] concise statement of the reasons for the action or recommendation." (Bylaws, art. VII, §§ 7.2, 7.3-1.) If a staff member requests a hearing regarding an adverse action, the MEC appoints a JRC, composed of not less than three members of the medical staff, to hear the matter. (*Id.*, art. VII, § 7.3-5.) At the

7

hearing, "the MEC shall bear the burden of persuading the JRC by a preponderance of the evidence that the action or recommendation is reasonable and warranted." (*Id.*, art. VII, § 7.4-7.) The JRC must issue a written decision and report containing "findings of facts and a conclusion articulating the connection between the evidence produced at the hearing and the decision reached." (*Id.*, art. VII, § 7.4-10.)

Finally, the decision of the JRC may be appealed by the staff member or the MEC to the Board on the grounds that "a) [there was] substantial non-compliance with the procedures required by these Bylaws or applicable law which has created demonstrable prejudice; b) the decision was not supported by substantial evidence based upon the hearing record." (Bylaws, art. VII, §§ 7.5-2, 7.5-4.) The appeal "shall be in the nature of an appellate hearing based upon the record of the hearing before the JRC . . . ." (*Id.*, art. VII, § 7.5-5.) The Board "may affirm, modify, or reverse the decision of the JRC or remand the matter to the JRC for reconsideration." (*Id.*, art. VII, § 7.5-6.)

II. *Judicial Review*

A hospital's final decision in a peer review proceeding may be reviewed by a petition for writ of administrative mandate. (Code Civ. Proc., § 1094.5; Bus. & Prof. Code, § 809.8; *El-Attar, supra,* ___ Cal.4th at p. ___ [2013 Cal.LEXIS 4697, pp. *12-*13]; *Ellison*, *supra*, 183 Cal.App.4th at p. 1495.) In an appeal from an order granting or denying the writ, the Court of Appeal "must apply the same standard of review as the trial court, giving no deference to the trial court's decision." (*Ellison*, at p. 1495.) "When the issue presented is whether the hospital's determination was made according to a fair procedure, the court will treat the issue as one of law, subject to independent review based on the administrative record. [Citation.]" (*Id.* at p. 1496.)

III. *It Was Not Improper for the Board to Remand for Reconsideration*

Appellant contends it was a violation of the Bylaws for the Board to remand to the JRC for reconsideration of the disposition, even though the Board concluded the JRC's decision was supported by substantial evidence.

This court rejected the same contention in parallel circumstances in *Ellison*, *supra*, 183 Cal.App.4th at pages 1496-1498. There, a peer review hearing resulted in a JRC

8

decision requiring the presence of a board certified assistant surgeon during the appellant doctor's surgical procedures. (*Id.* at p. 1492.) On appeal, the hospital board concluded the JRC's factual findings were supported by substantial evidence, but remanded the matter to the JRC so it could reconsider the option of revoking the doctor's clinical privileges pursuant to a revised recommendation from the MEC. (*Id.* at pp. 1493, 1497.) The JRC declined to change its disposition, but, on another appeal by the MEC, the Board reversed the JRC and revoked the doctor's hospital privileges. (*Id.* at p. 1493.) On appeal from the trial court's order denying the doctor's petition for writ of administrative mandate, this court held the hospital bylaws in *Ellison* "required the board to accept the JRC's factual findings if supported by substantial evidence, but gave the board the power to exercise independent judgment as to the appropriate disposition." (*Id.* at p. 1496.)

In reaching that conclusion, *Ellison* focused on several provisions in the hospital bylaws there. First, *Ellison* pointed out that the appeal provision in the bylaws gave the board "the ultimate responsibility of determining whether the action taken or recommended by the JRC is 'reasonable and warranted under the circumstances.' . . . By giving the board the power to make this factual determination . . . , the bylaws effectively allow the board to exercise its independent judgment as to what constitutes a reasonable disposition, even though it must defer to the JRC with respect to its findings on the underlying facts." (*Ellison*, *supra*, 183 Cal.App.4th at p. 1497; see also *id.* at p. 1495.) Appellant points out that the Bylaws in the present case specify as a ground for appeal that "the decision was not supported by substantial evidence" and do not specify the unreasonableness of the disposition as a ground for appeal. (See *Weinberg v. Cedars-Sinai Medical Center* (2004) 119 Cal.App.4th 1098, 1110 (*Weinberg*) [drawing distinction between bylaws that impose substantial evidence standard of review from those that do not].)

However, *Ellison* also relied on other portions of the bylaws in that case in concluding the board there had authority to exercise independent judgment regarding the disposition. In particular, *Ellison* pointed out that the bylaws empowered the board to take and consider additional evidence, "a power that would be meaningless if the board

9

could not make certain factual determinations independent of the JRC's." (*Ellison, supra,* 183 Cal.App.4th at p. 1497.)  The Bylaws in the present case also empower the Board to take additional evidence.  Moreover, *Ellison* pointed out that the board "has the power to 'affirm, modify or reverse' the JRC's decision," which *Ellison* construed as "specifically allowing [the board] to structure a different disposition than the JRC's if the latter's is not reasonable and warranted." (*Ibid.*)  A similar provision appears in the Bylaws in the present case, providing that the Board "may affirm, modify, or reverse the decision of the JRC or remand the matter to the JRC for reconsideration." (Bylaws, art. VII, § 7.5-6.)

Although the Bylaws in the present case provide less independent authority to the Board than the bylaws in *Ellison*, they still contemplate that the Board will exercise discretion in reviewing the JRC's decision.  Nothing in the Bylaws requires the Board to either adopt or reject the JRC's decision as written.  To the contrary, the Bylaws expressly authorize the Board to modify the decision and to remand for reconsideration.  Moreover, it is important to note that, while the board in *Ellison* substituted its own judgment for that of the JRC, the Board in the present case merely remanded for reconsideration in light of certain specified concerns regarding the practicality and effectiveness of the JRC's disposition.  The Board has the "[u]ltimate responsibility" to ensure patient safety.  (*Weinberg*, *supra*, 119 Cal.App.4th at p. 1109; see also *Mileikowsky v. West Hills Hospital & Medical Center* (2009) 45 Cal.4th 1259, 1267 (*Mileikowsky*); *Medical Staff of Sharp Memorial Hospital v. Superior Court* (2004) 121 Cal.App.4th 173, 181-182 ["[T]he overriding goal of the state-mandated peer review process is protection of the public and . . . , while important, physicians' due process rights are subordinate to the needs of public safety."]; *Hongsathavij v. Queen of Angels etc. Medical Center* (1998) 62 Cal.App.4th 1123, 1143.)  Absent unambiguous language in the Bylaws prohibiting the Board from acting as it did, we conclude the Board did not

10

exceed its authority under the Bylaws by remanding to the JRC for reconsideration of the disposition.[3]

IV. *Respondent Violated Due Process by Revoking Appellant's Privileges Without Providing Him an Opportunity to Respond to That Proposed Action*

Appellant also contends respondent violated the Bylaws, the peer review statutes, and his right to due process by revoking his staff membership and hospital privileges without providing him notice and an opportunity to respond to that proposed action. We conclude the revocation violated appellant's right to due process; we need not and do not decide whether that action also violated the Bylaws and/or the peer review statutes.[4]

A. *Due Process Rights in Peer Review Proceedings*

"Peer review that is not conducted fairly and results in the unwarranted loss of a qualified physician's right or privilege to use a hospital's facilities deprives the physician of a property interest directly connected to the physician's livelihood. [Citation.] As one author stated: 'It is almost impossible for a physician to practice medicine today unless [her or] she is a medical staff member at one or more hospitals. This is because a doctor cannot regularly admit or treat patients unless [he or] she is a member of the medical staff. Privileges are especially important for specialists, like surgeons, who perform the majority of their services in a hospital setting. For this reason, a hospital's decision to deny membership or clinical privileges, or to discipline a physician, can have an immediate and devastating effect on a practitioner's career.' [Citation.]" (*Mileikowsky, supra,* 45 Cal.4th at pp. 1267-1268.) Moreover, because hospitals are required to report

---

[3]  Appellant does not contend the Board's remand for reconsideration deprived him of due process. For the first time in his reply brief, appellant contends the Board's remand violated the peer review statutes. We do not address that contention, which has been forfeited. (*Loranger v. Jones* (2010) 184 Cal.App.4th 847, 858, fn. 9.)

[4]  *Ellison* held the hospital there did not violate the peer review statutes or bylaws at issue by imposing a disciplinary measure more severe than initially recommended by the MEC in the case. (*Ellison*, *supra*, 183 Cal.App.4th at p. 1499.) There, we concluded the notice of proposed action required by the governing statutes and bylaws did not "place a limit on what the governing body might ultimately decide." (*Ibid.*) However, in that case the physician had notice of and an opportunity to respond to the proposed action ultimately adopted. (*Id.* at pp. 1499-1500.)

denials of staff privileges to the Medical Board of California (Medical Board), and because hospitals considering granting staff privileges are required to contact the Medical Board to learn of disciplinary actions involving the physician, "[a] hospital's decision to deny staff privileges . . . may have the effect of ending the physician's career." (*Id.*, at p. 1268.)

Although respondent was not required to provide appellant " 'formal proceedings with all the embellishments of a court trial,' " due process and fair procedure required at a minimum "adequate notice of charges and a 'fair opportunity [for the affected party] to present his position.' " (*Anton v. San Antonio Community Hosp.* (1977) 19 Cal.3d 802, 829, 830; see also *Rhee v. El Camino Hospital Dist.* (1988) 201 Cal.App.3d 477, 489.)[5] Regarding the opportunity to be heard, the Supreme Court has explained, " 'It is a fundamental principle of justice that no man may be condemned or prejudiced in his rights without an opportunity to make his defense, and this principle is applicable not only to courts but also to labor unions and similar organizations.' " (*Pinsker v. Pacific Coast Society of Orthodontists* (1974) 12 Cal.3d 541, 555 (*Pinsker*).) Thus, "a basic ingredient of the 'fair procedure' required under the common law is that an individual who will be adversely affected by a decision be afforded some meaningful opportunity to be heard in his defense. Every one of the numerous common law precedents in the area establishes that this element is indispensible to a fair procedure. [Citations.]" (*Ibid.*; see also *Cleveland Bd. of Education v. Loudermill* (1985) 470 U.S. 532, 546 (*Loudermill*) ["The opportunity to present reasons, either in person or in writing, why [the] proposed action should not be taken is a fundamental due process requirement."].)

---

[5] A physician is afforded "due process" rights when a hospital is a public one (like Washington Hospital) and "fair procedure" rights when it is private. (*Applebaum v. Board of Directors* (1980) 104 Cal.App.3d 648, 656-657.) However, "[t]he distinction between fair procedure and due process rights appears to be one of origin and not of the extent of protection afforded an individual; the essence of both rights is fairness. Adequate notice of charges and a reasonable opportunity to respond are basic to both sets of rights. [Citations.]" (*Id.* at p. 657.)

12

B. *Appellant Did Not Receive Timely Notice of And an Opportunity to Respond to the Possibility of Revocation of His Membership And Privileges*

On appeal, respondent does not appear to deny that appellant was entitled to notice of the possibility his membership and privileges would be revoked. Instead, respondent argues appellant *was* provided such notice. However, close examination of the record shows the contrary. Respondent asserts, "[Appellant] was warned years before the final decision that termination could result from the Rao I peer review proceeding." The first document to which respondent points is the September 25, 2006 notice of charges. Respondent asserts that language on the first page of the notice informed appellant that "the recommended consequence 'may include termination from the Medical Staff without the right to further separate hearings.' " However, the full passage states, "Note the MEC recommends that the consequence of future MEC findings that you have engaged in disruptive conduct in violation of the behavioral expectations include automatic suspensions and may include termination from the Medical Staff without the right to further separate hearings." The clear import of that passage is that *future misconduct* could conceivably result in revocation of membership and privileges. Similarly, respondent points to an addendum to the notice and asserts, "the medical staff was, at that time, recommending a series of progressive disciplinary measures that could result in '[a]utomatic termination of Medical Staff membership and clinical privileges, without the right to a separate hearing.' " However, review of the addendum makes it clear the MEC was recommending a probationary program that could result in revocation of membership and privileges at the end of a long process of progressive discipline. Thus, once again, appellant was not provided notice the conduct that resulted in the MEC's charges could result in revocation; he was informed that *future conduct* could eventually lead to that result if the program of progressive discipline were imposed. In fact, the September 25, 2006 notice makes it clear the MEC's recommendation was *not* revocation of appellant's membership and privileges. The notice specifies the surgical privileges to be restricted and states, "[b]y restricting your practice to those areas where you are clearly competent, patients will be protected."

13

The February 8, 2007 supplemental notice also failed to inform appellant revocation of membership and privileges was contemplated. That notice revised the list of restrictions in the September 2006 notice, but it still contemplated appellant's continuing practice at Washington Hospital, stating that the restrictions are the "<u>current and only adverse recommendations</u>." (Underscoring in original.) In arguing that the supplemental notice did inform appellant revocation was contemplated, respondent quotes language at the end of the notice stating, "any recommendations that result in any final adverse action of the [Board], which restrict some or all of your surgical privileges, have been or will be reported" to the Medical Board. That language simply recites what the law requires—mandatory notice to the Medical Board of any restriction of privileges. (Bus. & Prof. Code, § 805, subd. (b).) It cannot be read to override the prior assurance that the specified, limited restrictions were the "only adverse recommendations."

Neither did appellant receive notice of the possibility of revocation in the JRC hearings. In those hearings, the MEC consistently took the position that appellant's privileges should be restricted, not revoked. Respondent does not argue to the contrary. Even in its brief for the Board appeal, the MEC continued to assert that "restrictions were designed to set limitations to allay concerns while still allowing [appellant] to continue to practice surgery, within limits." Ultimately, the MEC asked the Board to "[t]erminate certain vascular and general surgery privileges and place restrictions for all vascular and general surgical privileges that are not terminated . . . ." It was only in the appellate hearing officer's report to the Board that the suggestion was made that the Board could take a different, more severe action against appellant, although the officer stated the MEC and [appellant] should have an opportunity "to comment before a final decision is made." Subsequently, the Board remanded the matter to the JRC with directions that it "reconsider, review and make recommendations as to whether [appellant's] Medical Staff membership and all clinical privileges should be revoked." The Board also directed the JRC to "provide [appellant] and the MEC with notice of the issues on remand and a reasonable opportunity to respond to them and be heard." However, thereafter the JRC requested briefing solely on the question of whether the JRC had the power to

14

recommend disciplinary action different from what the MEC initially recommended. Appellant requested an opportunity to present evidence and argument on the appropriateness of revocation, but the JRC "concluded there was no need for further hearing sessions or receipt of additional evidence or argument with respect to the questions presented."

C. *Conclusions and Scope of Remand*

In the present case appellant had notice of the charges against him and the MEC's recommended actions, and an opportunity to respond to both. However, he was provided no opportunity to respond to the suggestion, raised for the first time in the Board's decision on appeal, that the JRC's findings justified revocation of membership and privileges and that the MEC's recommended actions were likely to be infeasible or ineffective. After the matter was remanded to the JRC for reconsideration of the disposition, appellant requested but was denied an opportunity to address the JRC on the merits of those issues. We conclude appellant's right to due process was violated when his membership and privileges were revoked without prior notice and an opportunity to present argument in response to the suggestion his privileges should be revoked. Prior to the Board's suggestion that revocation was the appropriate action, appellant never had any reason to argue the MEC's recommended actions were feasible and effective. Due process required that appellant be permitted to be heard on the appropriateness of revocation of his privileges. (See, e.g., *Pinsker*, *supra*, 12 Cal.3d at p. 555; *Loudermill*, *supra*, 470 U.S. at p. 546.)

On the other hand, it was not a violation of due process for the JRC to deny appellant an opportunity to present additional evidence. In the JRC's decision on remand, it concluded the MEC's recommended actions would be ineffective or infeasible based on the evidence presented in the previous evidentiary hearings. For example, the JRC concluded a proposal that appellant be allowed to perform surgical procedures only on medically "acceptable" patients was infeasible because "[i]t was demonstrated on a recurrent basis at the JRC hearing that [appellant] has difficulties with assessments of current health conditions." The decision continued, "the evidence at the hearing

15

confirmed that critical questioning by peers over [appellant's] medical judgments frequently resulted in anger, hostility, and belittling on [appellant's] part, as well as his dismissal of the contrary views offered. These conversations [about whether a patient is 'medically "acceptable" '] would likely be a breeding ground for additional dispute and contention."

With respect to a proposal that appellant be assigned a "monitor" to assist him with behavioral issues, the JRC concluded, "The evidence at the hearing revealed that [appellant] almost routinely rejected the views of those who had opinions or perceptions which differed from his own. Given this, it is difficult in the extreme to understand how this involuntary appointee will receive cooperation from [appellant] or that [appellant] will follow advice given." The JRC decision concluded overall, "the facts determined at the hearing indicate the corrective action proposed by the MEC is not sufficient to redress the professional and behavioral concerns generated by [appellant]. After months of hearings, volumes of documentary evidence, and the opportunity to personally evaluate the testimony of scores of witnesses, and most especially that of [appellant], the JRC unanimously states its conclusion and recommendation that the facts warrant revocation of [appellant's] Medical Staff clinical privileges and membership at Washington Hospital."

Thus, the JRC concluded the MEC's recommended actions would be ineffective and infeasible based on the evidence of appellant's disruptive and uncooperative behavior developed during the evidentiary hearings. Appellant had ample incentive and opportunity to counter that evidence during those hearings. Accordingly, appellant has already had an opportunity to present evidence on the issues that were the basis for the JRC's decision recommending revocation of appellant's privileges. We recognize there conceivably is other evidence appellant might have presented in support of an argument in favor of the MEC's recommended actions. However, in light of the fact that appellant had ample opportunity to present evidence regarding the determinative issue of his behavior, the failure to provide him an opportunity to present additional, less probative evidence did not constitute a deprivation of due process. Although respondent was

16

obligated to provide appellant an opportunity to respond to the suggestion his privileges should be revoked, in light of the extensive prior proceedings and the limited nature of the issue on remand, respondent was not obligated to permit appellant to present additional evidence in order for him to have "a *fair* opportunity . . . to present his position." (*Pinsker*, *supra*, 12 Cal.3d at p. 556.)

Respondent contends any violation of due process was harmless because it is clear appellant's privileges would have been revoked in any event. On the other hand, appellant contends the failure to permit him to respond to the new proposed action was reversible per se. We need not decide whether appellant's contention is correct, because even if the due process violation is not reversible per se, we must reverse because we cannot conclude the violation was harmless beyond reasonable doubt. (*People v. Woodward* (1992) 4 Cal.4th 376, 387.) As noted previously, prior to the Board's remand appellant never had any reason to argue in favor of the MEC's recommended actions; to the contrary, his position was that the actions were not justified by his behavior. Although it appears likely the JRC would have recommended revocation of privileges in any event, appellant might have been able to address a number of the JRC's concerns had he been provided a fair opportunity to address the feasibility and effectiveness of the MEC's recommended actions. Notably, the JRC stated in its decision on remand, "In its initial Decision, the JRC made it clear the criteria of 'reasonable and warranted' did not mean there was only one best or perfect answer, but allowed for differences of opinion which could be viewed as rational choices among a range of reasonable options." We cannot conclude beyond a reasonable doubt that appellant could not have convinced the JRC that the MEC's recommended actions were the more reasonable option. A writ of mandate must issue directing that the revocation be set aside.[6]

That raises the question of the nature of the proceedings on remand. We have *not* concluded appellant's right to due process was violated because he was not provided

---

[6]    Respondent argues in passing that appellant has forfeited this claim because he failed to raise the issue in his pro per writ petition. In fact, appellant *did* complain that the JRC did not allow further briefing and evidence following the Board remand.

notice of the possibility of revocation at the outset of the peer review proceedings or during the JRC proceedings leading up to the issuance of the first JRC decision. Instead, we have merely concluded appellant was entitled to *some* opportunity to respond to the suggestion that revocation was the appropriate disposition. Moreover, appellant does not contend the absence of notice of the possibility of revocation affected how he conducted himself in the initial JRC hearings and, therefore, the failure to provide early notice of that possibility requires that the JRC's findings of fact be vacated. Accordingly, the due process violation does not affect the findings of fact in the JRC's first decision. We remand *solely* for the purpose of providing appellant an opportunity to present argument on whether the JRC's findings justified revocation of his staff membership and hospital privileges. Respondent may decide whether appellant's response is to be submitted in person or in writing, or both, and may impose reasonable restrictions on the length of any oral or written submission. Respondent is not obligated to permit appellant to present additional testimony or other evidence.

V. *Appellant Has Not Shown He Was Prejudiced by the Presence of Counsel for the MEC at Some Hearing Sessions*

Appellant contends it was a violation of the Bylaws and peer review statutes for the MEC to be represented by counsel at a number of hearing sessions when he was not also represented by counsel. Appellant has not shown he was prejudiced by any violation of the Bylaws or statutes.

Business and Professions Code section 809.3, subdivision (c) provides, "The peer review body shall adopt written provisions governing whether a licentiate shall have the option of being represented by an attorney at the licentiate's expense. No peer review body shall be represented by an attorney if the licentiate is not so represented . . . ." The Bylaws provide, "Neither the member nor the MEC shall be represented in any phase of the hearing by an attorney at law unless one party or the other requests it. In no event shall the MEC be represented by an attorney if the member is not so represented." (Bylaws, art. VII, § 7.4-2.) Nevertheless, appellant asserts that the JRC permitted the MEC to be represented by counsel for seven of the total 43 days of hearing, even though

18

appellant was unrepresented and objected to MEC's representation by counsel. He asserts that the sessions determined the witnesses and exhibits the parties would be allowed to present in the evidentiary sessions. The hearing officer did not permit the MEC to be represented by counsel during the "formal evidentiary phase" of the proceedings.

Respondent disputes that the cited portion of the Bylaws and peer review statutes apply to nonevidentiary phases of a peer review proceeding. We need not decide that question because appellant has not shown that the alleged violation of the Bylaws and peer review statutes requires that the JRC's findings and the Board's subsequent decision be vacated.

Appellant argues the alleged violation of the Bylaws and peer review statutes requires reversal without any showing of actual prejudice, but he cites only to cases in the criminal and immigration contexts where defendants or persons in deportation proceedings were *denied* access to counsel, or their right to be represented by counsel was otherwise interfered with. (*United States v. Cronic* (1984) 466 U.S. 648, 659, fn. 25; *Montilla v. I.N.S.* (2d Cir. 1991) 926 F.2d 162, 166, 169; but see *Gill v. Mercy Hospital* (1988) 199 Cal.App.3d 889, 902 ["Medical staff hearings involve highly educated individuals. There is little risk that a physician will be erroneously deprived of staff privileges if he is not allowed counsel at the hearing. The physician's position is decidedly dissimilar to that of a criminal defendant . . . ."].) In the present case, appellant was not denied access to counsel. Instead, appellant's complaint is that the MEC was permitted to be represented by counsel at about 16 percent of the hearing sessions. Appellant has failed to support with citations to relevant authority his claim that the alleged violation *requires* reversal, and he has failed to present any reasoned argument why the presence of counsel for the MEC in those hearings rendered the proceeding fundamentally unfair or created a likelihood of actual prejudice.

19

VI. *Appellant Has Not Shown a Basis for Issuance of a Writ of Mandate With Respect to the Rao II Peer Review Proceeding*

Appellant seeks issuance of a writ of mandate directing that "no subsequent deliberations" take place in the Rao II peer review proceeding. We construe this to be a request that the Rao II proceeding be terminated without the imposition of discipline on him pursuant to the charges involved therein. Appellant contends the Rao II proceeding is an attempt to interfere with his First Amendment rights. However, he fails to present any reasoned argument with citations to authority why this court can and should deem the proceedings concluded without imposition of discipline, prior to the issuance of any decision. Because appellant has failed to properly support his claim for relief, we reject his request for a writ of mandate addressing the Rao II proceeding.

DISPOSITION

The superior court's order denying appellant's petition for writ of mandate is reversed. The superior court is directed to issue a writ of mandate instructing respondent to set aside the revocation of appellant's medical staff membership and hospital privileges and directing respondent to conduct further proceedings consistent with this decision. The parties shall bear their own costs on appeal.

 

SIMONS, J.

 

We concur.

JONES, P.J.

BRUINIERS, J.

20