Filed 6/24/16  McClelland v. Director of the Dept. of Health Care Services CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| LARRY McCLELLAND,<br><br>    Defendant and Appellant,<br><br>    v.<br><br>DIRECTOR OF THE DEPARTMENT OF HEALTH CARE SERVICES,<br><br>    Plaintiff and Respondent. | B262745<br><br>(Los Angeles County<br> Super. Ct. No. BC504472) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Frederick C. Shaller, Judge.  Affirmed.

Larry McClelland, in pro. per., for Defendant and Appellant.

Kamala D. Harris, Attorney General, Julie Weng-Gutierrez, Assistant Attorney General, Jennifer M. Kim and Brittney M. Lovato, Deputy Attorneys General, for Plaintiff and Respondent.

Medi-Cal is California's enactment of the federal Medicaid program, designed to provide health care services for the poor and disabled. For a person older than 55, financial eligibility for Medi-Cal is calculated without including the value of the person's principal residence. However, after the person's death, Welfare and Institutions Code section 14009.5 requires the Department of Health Care Services to seek reimbursement from the estate for Medi-Cal benefits provided during the person's lifetime. The reimbursement requirement is subject to several exemptions, or "waivers" by the Department, including (as relevant to this case) the so-called caretaker and disability exemptions.

Here, appellant Larry McClelland, as co-trustee of the Christine McClelland Trust (the Trust), appeals from the judgment following a bench trial in favor of Toby Douglas, Director of the Department of Health Care Services (Department). The judgment directs appellant (in his capacity as co-trustee) to reimburse the Department $61,358.57, plus interest, as repayment for Medi-Cal benefits received by the settlor of the Trust, his mother, Christine McClelland, during her lifetime.

In his appeal, appellant contends: (1) the Department's claim for reimbursement was untimely under Probate Code section 19202; (2) the trial court erred in finding that he did not qualify for the caretaker exemption under 42 United States Code section 1396p, subdivision (b)(2)(B)(ii), a provision of the federal Medicare Act; (3) the trial court erred in finding that he did not qualify for the disability exemption provided by 42 United States Code section 1396p, subdivision (b)(2)(A), also a provision of the Medicare Act; and (4) his due process rights were violated by the trial court's failure to hold a final status conference before trial and by the failure to provide valid notice that a court reporter would not be present to record the proceedings. We are not persuaded by appellant's contentions, and affirm the judgment.

2

## BACKGROUND[1]

*Medi-Cal Benefits Paid*

Born August 29, 1919, Christine McClelland (the decedent) was a Medi-Cal beneficiary from January 1991 to her death on March 2, 2010. In that period, the Department paid $61,358.87 in health care services and premiums for her benefit.

*Decedent's Property in Trust*

Before her death, by a Declaration of Trust dated in February 2000, the decedent created a revocable inter vivos trust to own and administer her property during her lifetime, and to avoid probate upon her death. Concurrently, she quitclaimed to the Trust ownership of her residence on Potomac Avenue in Los Angeles. When the decedent died, the Trust owned her residence, which was valued at $301,567.

---

[1] No court reporter was present at the trial, and appellant has not presented an agreed or settled statement on appeal. (See Cal. Rules of Court, rules 8.134, 8.137.) Rather, the appeal is presented on the basis of a clerk's transcript. "'When an appeal is submitted on a record of this kind, the reviewing court *conclusively* presumes the evidence was ample to sustain the trial court's factual findings. The only question is whether the findings support the judgment.' [Citation.]") (*Wright v. Issak* (2007) 149 Cal.App.4th 1116, 1122.)

The minute order of the trial states that three witnesses testified: David Eller, a representative of the Department's Third Party Liability and Recovery Division Estate Recovery Unit, appellant, and Sharon McClelland Boyd (like appellant, a co-trustee). Also, various exhibits were admitted into evidence. We take our summary of the evidence from the trial court's statement of decision, trial exhibits in our record, and matters of which we have taken judicial notice at the Department's request (certain documents filed in the trial court, but absent from the clerk's transcript). In the Discussion section of our opinion, we add any additional evidence properly before us as necessary to resolve appellant's contentions.

*Pre-death Family Litigation*

Under the trust instrument, as here relevant, the named trustees were three of decedent's children: Sharon McClelland (later in the record identified as Sharon McClelland Boyd), Kathryn McClelland, and appellant. These three were also beneficiaries of the Trust, along with another son, Anthony McClelland.[2]

In August 2004, Anthony filed a Petition for Appointment of a Conservator for the decedent and her estate. Apparently in response, by a trust amendment dated October 15, 2004, the decedent deleted Anthony as a beneficiary, and on October 26, 2004, the petition was denied. In 2007, Anthony filed another such petition, which he withdrew after a restraining order was granted against him, directing that he stay away from the decedent and her residence.

*Holloway Letter and the Department's First Demand Letter*

On April 6, 2010, attorney George Holloway sent a letter to the Department at its Sacramento address informing the Department of the decedent's death. He did not identify himself as the attorney for the Trust, the trustees, or any other client, nor did he identify any court proceeding involving the trust or the decedent's estate.

In the letter, Holloway listed the decedent's name, social security number, and dates of birth and death. He wrote that her estate and trust might owe money for medical services rendered during her lifetime. He instructed the Department to contact trustees Sharon McClelland and Kathryn McClelland if the Department had any questions, gave their addresses, and attached a copy of the death certificate.

---

[2] There were other named beneficiaries who are not relevant to this appeal.

4

On June 23, 2010, the Department sent a payment demand letter to Holloway and trustee Sharon McClelland, stating that the Department was entitled to $61,358.57 from the decedent's estate under Welfare and Institutions Code section 14009.5.

*Probate Action*

On September 23, 2010, without notice to the Department, Holloway, as counsel for Anthony McClelland, filed a probate action seeking an order granting Anthony authority to administer the estate. Appellant (representing himself) filed an objection, citing the existence of the Trust and stating that Anthony had been removed as a beneficiary.

In May 2011, represented by attorney Crystal Hill, appellant and the other two trustees filed additional objections. Ultimately, the probate case was dismissed with prejudice in September 2011.

*Additional Demand Letters*

Before the dismissal of the probate case, on December 7, 2010, the Department sent a payment demand letter to appellant, followed by several follow-up letters from April 2011 through October 2012, sent to appellant, his estate attorney (Crystal Hill), and Sharon McClelland. The claim was never paid.

*The Department's Lawsuit*

On March 29, 2013, the Department filed a complaint to enforce and collect on its Medi-Cal creditor's claim from the decedent's estate under Welfare and Institutions Code section 14009.5, naming as defendants Sharon McClelland Boyd, Kathryn McClelland, and appellant as trustees of the Trust. Kathryn McClelland

5

was apparently not served, and the court dismissed her. Appellant and Sharon McClelland Boyd were served, but only appellant filed an answer. At trial, appellant and Sharon McClelland Boyd appeared in pro. per. Following the presentation of evidence and argument, the trial court issued a tentative statement of decision, later followed by a final statement of decision, in which it concluded that appellant and Sharon McClelland Boyd, as trustees of the Trust, owed the Department $61,358.87, plus interest, in reimbursement. Appellant filed a notice of appeal from the resulting judgment. Sharon McClelland Boyd did not, and is not a party to the appeal.

## DISCUSSION

To put the issues on appeal in context, we begin with a brief explanation of the Medi-Cal statutory scheme.

"Under the federal Medicaid Act, 42 United States Code section 1396 et seq., the federal government will partially reimburse states that provide medical treatment to the poor. If a state decides to participate in the program, the state must enact legislation which meets various federal requirements. [Citation.] California's Medicaid program, known as the 'California Medical Assistance Program,' or Medi-Cal, is found in the Welfare and Institutions Code at section 14000 et seq." (*Belshé v. Hope* (1995) 33 Cal.App.4th 161, 164.)

"The Medicaid Act provides that applicants may qualify for Medicaid benefits if they are aged, blind, or disabled and their income and resources are insufficient to meet the costs of health care. [Citation.] If the applicant is over the age of 55, his or her principal residence is excluded when determining eligibility. This allows elderly applicants, despite having a valuable asset, to qualify for Medicaid covered services. [Citation.] In exchange, federal law requires that the

6

state recover all or a portion of the Medicaid benefits paid during the recipient's lifetime from his or her estate at death. [Citations.] [¶] In compliance with federal law, state law [Welf. & Inst. Code, § 14009.5, subd. (a)] also requires the Director [of the Department of Health Care Services] to seek reimbursement from the deceased recipient's estate or from recipients of property from the decedent by distribution or survival. [Citation.] This requirement is expressed in mandatory terms. Property once held by the decedent and transferred to heirs by a trust is part of the decedent's estate and is subject to recovery under the same statute. [Citation.]" (*Maxwell-Jolly v. Martin* (2011) 198 Cal.App.4th 347, 353-354.)

With this background in mind, we consider appellant's contentions on appeal.

I.     *Timeliness of the Department's Claim*

Based on the Holloway letter, which informed the Department of the decedent's death and advised that her estate and trust might owe money for medical benefits received during her lifetime, appellant contends that the Department's creditor's claim for reimbursement was untimely under Probate Code section 19202.[3] That section provides, in relevant part: "(a) If the trustee knows or has reason to believe that the deceased settlor received health care under [Medi-Cal], . . . , the trustee shall give the State Director of Health Services notice of the death of the deceased settlor . . . in the manner provided in Section 215. [¶] (b) The director has four months after notice is given in which to file a claim."

Appellant argues that the Holloway letter, dated April 6, 2010, constituted notice under sections 19202, subdivision (a) and 215, and that the Department had

---

[3]     All undesignated section references in this part of our opinion refer to the Probate Code.

7

four months from that date under section 19202, subdivision (b) within which to file a claim against the Trust. Because the Department did not file its complaint for reimbursement under Welfare and Institutions Code section 14009.5 until March 2013, appellant asserts that the Department's creditor's claim is barred as untimely.

Respondent counters, in substance, that the Holloway letter did not constitute valid notice of the decedent's death under sections 19202 and 215, because: (1) Holloway was not a trustee, and section 19202 requires the trustee, and not some other person, to provide notice, and (2) the notice did not specify a court proceeding in which the Department might file a claim under section 19202. We agree with the second point, and thus need not discuss the first. That is, even if the Holloway letter otherwise constituted valid notice of the decedent's death, that notice did not occur in the context of a proceeding in superior court as contemplated by the Probate Code procedure for handling creditor claims against a trust. Therefore, the time limit to file a claim under section 19202 did not apply. Rather, the three-year statute of limitations provided by Code of Civil Procedure section 338, subdivision (a), applied, and the Department timely filed its action within that period.[4]

---

[4] In its statement of decision, the trial court concluded that the Holloway letter (dated April 6, 2010) constituted notice of the decedent's death, and the Department's letters to Holloway and trustee Sharon McClelland (dated June 23, 2010, approximately two-and-a-half months later) constituted claims under section 19202. Thus, the trial court concluded that the Department met the four-month time limit for filing a claim under that section.

On appeal, the Department concedes that the trial court's reasoning was incorrect, but argues that we can uphold the judgment on different legal grounds. We agree, given that the issue presented is one of law. "It is well established that: '"The fact that the action of the [trial] court may have been based upon an erroneous theory of the case, or upon an improper or unsound course of reasoning, cannot determine the question of its propriety. . . . [A] ruling or decision, itself correct in law, will not be disturbed on appeal

A. *Probate Code Procedure for Creditor Claims*

Part 8 of the Probate Code, sections 19000, et seq., provides a procedure, including notice and time limits, for processing creditor claims against a deceased settlor's revocable trust.  (*Wagner v. Wagner* (2008) 162 Cal.App.4th 249, 254; see Ross, Cal. Practice Guide:  Probate (The Rutter Group 2015) ¶ 2:117.2 et seq., pp. 2-93 et seq.)  "A trustee is not required to utilize this formal claims procedure and, as an alternative, may proceed informally in administering a decedent's trust. . . . 'If no probate or trust claims procedure has been initiated, . . . the short limitations periods applicable to claims filed in probate or trust claims proceedings do not apply; and the availability of trust property to any creditor of the deceased settlor "shall be as otherwise provided  by law."'  [Citation; see § 19008.]  Thus, absent a trustee's election to file a formal notice to claimants, the time to assert a claim against a decedent's revocable trust is governed by the more general statute of limitations for all claims against a decedent embodied in Code of Civil Procedure section 366.2."  (*Wagner, supra*, 162 Cal.App.4th at p. 255.)

The formal claims procedure works as follows.  First, the trustee must file "a proposed notice to creditors" in the superior court, whereupon the court assigns a case number.  After the claim proceeding is opened, the trustee must serve notice on creditors as provided by the Code.  (§ 19003, subds. (a) & (c).)  Upon service of the notice, the creditor has a limited time frame within which to file a claim "with the court," and mail a copy to the trustee.  (§ 19150, subd. (b).)  However, not

merely because given for a wrong reason.'"  [Citation.]  Thus, '[i]f the decision of the lower court is right, the judgment or order will be affirmed regardless of the correctness of the grounds upon which the court reached its conclusion.'"  (*Troche v. Daley* (1990) 217 Cal.App.3d 403, 407-408.)

9

mailing a copy to the trustee does not invalidate the claim; rather, "any loss that results from the failure shall be borne by the creditor." (*Ibid.*)

If the creditor's claim is timely filed with the court, the trustee "shall allow or reject the claim in whole or in part." (§ 19250.) The allowance or rejection must be filed with the court in writing, and served on the creditor in compliance with section 215. (§ 19251.) If the claim is rejected, the creditor must bring a court action, arbitration proceeding, or reference proceeding on the claim within 90 days after service of the rejection notice (if the claim was due when notice was given), or 90 days after the claim becomes due (if it was not due when the notice was given). (§ 19255, subd. (a).)

For most creditor claims, the notice to creditors is governed by section 19003, subdivision (a), which requires the trustee, after filing a proposed notice with the court, to "publish and serve notice to creditors of the deceased settlor in the form and within the time prescribed in Chapters 3 (commencing with Section 19040 [which governs the published notice]) and 4 (commencing with Section 19050 [which governs service by mail or personal delivery]). That action shall constitute notice to creditors of the requirements of this part." The notice must be "substantially" in the form suggested by the Probate Code, including notification of the particular superior court in which the matter is pending, the case number, and the requirement that a creditor's claim must be filed with the court and a copy sent to the trustee. (§§ 19040, 19052.)

However, for certain public entity creditors, the publication and service of notice under section 19003, subdivision (a), does not apply. Thus, section 19003, subdivision (c) provides that "[n]othing in subdivision (a) [which requires notice by publication and mail or personal delivery] affects a notice or request to a public

10

entity required by Chapter 7 (commencing with Section 19200) [which governs claims by certain listed public entity creditors]."

Chapter 7 contains section 19202, the statute on which appellant relies to argue that the Department's claim in the instant case was untimely. As we have noted, section 19202 provides in relevant part: "(a) If the trustee knows or has reason to believe that the deceased settlor received health care under [Medi-Cal], . . . , the trustee shall give the State Director of Health Services notice of the death of the deceased settlor . . . in the manner provided in Section 215." Section 215 requires "the estate attorney, or if there is no estate attorney, the beneficiary, the personal representative, or the person in possession of property of the decedent" to serve the Department at its Sacramento office with notice of the decedent's death by mail or personal delivery, including a copy of the death certificate, within 90 days after the death. Under section 19202, subdivision (b), the Department "has four months after notice is given in which to file a claim," meaning to file a claim with the court in which the creditor-claim proceeding is pending (§ 19150, subd. (b).)


B. *Failure to Use the Probate Code Procedure*

If the trustee gives the Department notice of the settlor's death in compliance with section 215, but has not invoked the procedure of Part 8 of the Probate Code by first filing a proposed notice to creditors in the superior court under section 19003, subdivision (a), the time limit for the Department to file a claim under section 19202 does not apply. Indeed, there is no court proceeding in which such a claim could be filed within the meaning of the section 19202. In this circumstance, the time limit in which the Department must pursue the claim is provided by the applicable statute of limitations for bringing a lawsuit – Code of

11

Civil Procedure section 338, subdivision (a), which provides a three-year limitation period to file suit for "'[a]n action upon a liability created by statute, other than a penalty or forfeiture.'" (*Maxwell-Jolly, supra,* 198 Cal.App.4th at p. 352, fn. 5.) The three-year period begins to run on the date that notice is sent to the Department in compliance with section 215. (*Shewry v. Begil* (2005) 128 Cal.App.4th 639, 642, 645-646.)

C. *The Department's Lawsuit was Timely*

Here, the Holloway letter was dated April 6, 2010. Even if it otherwise constituted valid notice of the decedent's death under section 215, it was not sent in connection with a proceeding under Part 8 of the Probate Code. That is, neither Holloway nor anyone else filed in the superior court an appropriate notice to creditors under section 19003, subdivision (a). No claim proceeding was opened in superior court, and the Holloway letter did not refer to such a proceeding. Thus, the time limit for filing a claim in such a proceeding under section 19202 did not apply.

To the extent appellant contends that the Department was required by section 19202 to file a claim at some point in the September 23, 2010 probate proceeding instituted by Holloway on behalf of the decedent's disinherited son, Anthony McClelland, appellant is mistaken. The procedure for creditor claims against a trust under Part 8 of the Probate Code does not apply if, to the trustee's actual knowledge, a probate has been opened for the decedent's estate. (§ 19003, subd. (a); see *Arluk Medical Center Industrial Group, Inc. v. Dobler* (2004) 116 Cal.App.4th 1324, 1334.) Rather, a similar, though separate, procedure applies to creditor claims when a probate proceeding is instituted. (§ 9000, et. seq.) That procedure requires written notice to the Department of the probate proceeding.

12

(§ 9201, subd. (a)(2).)  Here, there is no evidence that any such notice was sent to the Department, and thus the procedure for creditor claims against a probated estate did not apply.

Finally, because no creditor claims proceeding under Part 8 of the Probate Code was instituted, the three-year limitation period of Code of Civil Procedure section 338, subdivision (a), applied to the Department's reimbursement claim (*Maxwell-Jolly, supra,* 198 Cal.App.4th at p. 363), with the three-year period beginning upon proper notice to the Department of the decedent's death in compliance with section 215.  (*Shewry, supra,* 128 Cal.App.4th at pp. 645-646.) The Department filed its lawsuit on March 29, 2013, within three years of the Holloway letter (April 6, 2010).  Thus, assuming (without deciding) that the Holloway letter otherwise constituted valid notice of the decedent's death under section 215, the lawsuit was timely.

II.    *Caretaker Exemption*

Appellant contends that the trial court erred in finding that he did not qualify for the caretaker exemption under 42 United States Code section 1396p, subdivision (b)(2)(B)(ii), a provision of the Medicare Act.  We disagree.  As we explain, whether that exemption applies, as implemented by Medi-Cal, is determined by administrative proceedings held by the Department, reviewable by petition for writ of administrative mandate.  It is undisputed that appellant did not comply with this procedure.  Thus, under the doctrine of exhaustion of

13

administrative remedies, the caretaker exemption provided no defense to the Department's lawsuit.[5]

A. *Medicaid Caretaker Exemption*

The provision on which appellant relies, 42 United States Code section 1396p, subdivision (b)(2)(B)(ii), provides a limited caretaker exemption that prevents a state from seeking reimbursement by placing a lien on the home of a deceased aid recipient. It applies when the aid recipient's child lived in the recipient's home for at least two years immediately before the recipient's admission to a medical institution, and the child proves to the satisfaction of the

---

[5] For reasons not apparent from the record, in its statement of decision, the trial court reached the merits of defendant's claim for a caretaker exemption, and found the evidence insufficient. Although the trial court resolved the question by determining that appellant did not meet the evidentiary requirements of the exemption, we resolve the issue on a different basis, because, as a matter of law, appellant's claim for the exemption was barred by his failure to exhaust administrative remedies, and the trial court lacked jurisdiction to consider it. (See *Troche, supra,* 217 Cal.App.3d at pp. 407-408 ["'[i]f the decision of the lower court is right, the judgment or order will be affirmed regardless of the correctness of the grounds upon which the court reached its conclusion.'"].) In any event, even if the question whether appellant was entitled on the evidence to the caretaker exemption were properly before us, we would affirm the trial court's conclusion, because we have no reporter's transcript of the trial and cannot review the evidence presented. (*Wright, supra,* 149 Cal.App.4th at p. 1122 [absent a reporter's transcript, it is conclusively presumed losing party did not carry its burden of proof].)

state that the child provided care that permitted the recipient to remain at home rather than in an institution.[6]

In state health care systems that participate in Medicaid, the exemption is implemented by regulations promulgated by the state. Thus, 42 United States Code section 1396p, subdivision (b)(3)(A) provides that the relevant "State agency shall establish procedures (in accordance with standards specified by the Secretary [of Health and Human Services]) under which the agency shall waive the application of this subsection [which permits reimbursement from a deceased aid recipient's estate] . . . if such application would work an undue hardship as determined on the basis of criteria established by the Secretary." (42 U.S.C., § 1396p, subd. (b)(3)(A).)

B. *Medi-Cal Caretaker Exemption*

California incorporates the Medicare caretaker exemption by statute and administrative regulations. Welfare and Institutions Code section 14009.5,

---

[6] 42 United States Code section 1396p, subdivision (b)(2)(B)(ii) provides in relevant part:

"(b) Adjustment or recovery of medical assistance correctly paid under a State plan. [¶] . . .

"(2) Any adjustment or recovery under paragraph (1) may be made only after the death of the individual's surviving spouse, if any, and only at a time – [¶] . . . [¶]

"(B) in the case of a lien on an individual's home under subsection (a)(1)(B), when– [¶] . . . [¶]

"(ii) no son or daughter of the individual (who was residing in the individual's home for a period of at least two years immediately before the date of the individual's admission to the medical institution, and who establishes to the satisfaction of the State that he or she provided care to such individual which permitted such individual to reside at home rather than in an institution), is lawfully residing in such home who has lawfully resided in such home on a continuous basis since the date of the individual's admission to the medical institution."

subdivision (c)(1) provides that "[t]he department shall waive its claim, in whole or in part, if it determines that enforcement of the claim would result in substantial hardship to other dependents, heirs, or survivors of the individual against whose estate the claim exists."

The criteria for determining substantial hardship are listed in Title 22, California Code of Regulations, section 50963. Subdivision (a) of that regulation provides, in relevant part: "(a) The Department shall waive an applicant's proportionate share of the claim [meaning the Department's claim for reimbursement] if the applicant can demonstrate through submission of an Application for Hardship Waiver, form DHCS 6195 (05/15) and documentation to substantiate hardship, or, if applicable, at an estate hearing, that enforcement of the Department's claim would result in substantial hardship to the applicant. In determining the existence of substantial hardship, the Department shall waive an applicant's proportionate share of the claim if one or more of the following criteria apply: [¶] . . . [¶] (4) When the applicant provided care to the decedent for two or more years that prevented or delayed the decedent's admission to a medical or long-term care institution. The applicant must have resided in the decedent's home during the period care was provided and continue to reside in the decedent's home. The applicant must provide written medical substantiation from a licensed health care provider(s), which clearly indicates that the level and duration of care provided prevented or delayed the decedent from being placed in a medical or long-term care institution."

After the Hardship Waiver is submitted, "[t]he Department shall provide written notification to the applicant of its decision regarding the hardship waiver application within 90 days of the submission of the application." (Title 22, Cal. Code of Regs., § 50963, subd. (f).) If the Hardship Waiver is denied, the applicant

16

can request an estate hearing (*id.* at § 50964, subd. (a)), which is held before a hearing officer (*id.* at subd. (b)) and at which "the applicant and/or the applicant's representative shall have the opportunity to be heard, offer evidence, and present witnesses in support of the request for a waiver. All testimony shall be submitted under oath, affirmation, or penalty of perjury. The proceedings at the estate hearing shall be electronically recorded" (*id.* at subd. (a)(3).) If the final decision after hearing is unfavorable to the applicant, "[j]udicial review of the final decision of the Department may be had by filing a petition for a writ of administrative mandate in accordance with the provisions of Section 1094.5, et seq., Code of Civil Procedure." (*Id.,* subd. (f).)

### C. *The Instant Case*

"As a general rule where 'an administrative remedy is provided by statute, relief must be sought from the administrative body and this remedy exhausted before the courts will act; . . .' [Citation.] When the issue is properly pursued, jurisdiction of the court to entertain an action for judicial relief is conditional upon a completion of the administrative procedure. [Citation.] The rule applies as well when the administrative procedure is provided by regulation, resolution or ordinance. [Citations.] The rationale for the rule has been explained as follows: 'The administrative claim or "cause of action" is within the special jurisdiction of the administrative agency, and the courts may act only to review the final administrative determination. Allowing a suit prior to such a final determination would constitute interference with the subject matter jurisdiction of another tribunal. Accordingly, the exhaustion of an administrative remedy is a jurisdictional element in California.' [Citations.]" (*Green v. City of Oceanside* (1987) 194 Cal.App.3d 212, 219-220.)

17

Here, appellant produced no evidence to show that he complied with the administrative procedure for obtaining the caretaker exemption. On December 7, 2010, the Department sent appellant a letter at the decedent's address, where appellant resided, and enclosed a Hardship Waiver form. The letter explained that the form was "being provided to allow you the opportunity to apply for a waiver of your proportionate share of the claim. The completed application and required supporting documents MUST be mailed to the address shown above. . . . Failure to do so will result in an automatic rejection of your request for a hardship waiver." The record contains no evidence that appellant returned the form and was granted an exemption (whether by the Department, or by issuance of a writ of administrative mandate following a denial by the Department). Indeed, appellant does not dispute that he failed to comply with this procedure. Thus, the caretaker exemption was not a defense to the Department's lawsuit.

Appellant argues that the California procedure is in conflict with federal law, and thus invalid. The basis of his argument is that the Hardship Waiver application "consists of listing the decedent's estate assets, applicant's assets and debts, and applicant's income, savings and expenses," whereas the Medicaid caretaker exemption does not require disclosure of this information.

However, the proper forum to raise a claim that the Hardship Waiver application conflicts with Medicaid is not in defense of a lawsuit for Medi-Cal reimbursement under Welfare and Institutions Code section 14009.5, but in the administrative procedure provided by the Department to determine entitlement to the caretaker exemption. In any event, nothing in the Hardship Waiver application

18

violates federal law.[7] The application is used for several categories of hardship, not simply for the caretaker exemption. For some of those exemptions (for instance, the exemption that exists if inheritance will enable the applicant to discontinue public assistance) information such as the estate assets and the applicant's assets, liabilities, and income are necessary. The form clarifies that all the information requested is "voluntary," though failure to provide information may result in a denial of the waiver application.

The form directs the applicant to "check the criteria below that qualifies the applicant for a hardship waiver. Attach documentation that provides substantiation for the criteria selected. Failure to provide sufficient substantiation may result in a denial of the waiver." Among the waivers listed is the caretaker exemption: "The applicant provided care to the decedent for two or more years that prevented or delayed the decedent's admission to a medical or long-term care institution. The applicant must have resided in the decedent's home during the period care was provided and continue to reside in the decedent's home. The applicant must provide written medical substantiation from a licensed health care provider(s), which clearly indicates that the level and duration of care provided prevented or delayed the decedent from being placed in a medical or long-term care institution." This explanation of the caretaker exemption, and the required documentation, tracks the federal exemption.

Thus, the Hardship Waiver application does not require disclosure of irrelevant information in order to receive the caretaker exemption, and does not impose requirements to receive the exemption that are inconsistent with federal

---

[7] The form can be found at http://www.dhcs.ca.gov/formsandpubs/laws/regs/Documents/DHCS-6195-08-2007.pdf. We take judicial notice of it. (Evid. Code, § 452, subd. (b).)

19

law. That the form asks for additional information on a voluntary basis does not render the entire California procedure invalid such that appellant was not required to comply.

### III. *Disability Exemption*

Appellant contends that the trial court erred in finding that he did not qualify for the disability exemption provided by 42 United States Code section 1396p, subdivision (b)(2)(A). We disagree.

### A. *Medicaid Disability Exemption*

42 United States Code section 1396p, subdivision (b)(2)(A) states in relevant part: "(b) Adjustment or recovery of medical assistance correctly paid under a State plan. [¶] . . . [¶] (2) Any adjustment or recovery under paragraph (1) may be made only after the death of the individual's surviving spouse, if any, and only at a time– [¶] (A) when he has no surviving child who . . . is blind or disabled as defined in section [1614 of the Social Security Act, 42 U.S.C.A. § 1382c]."

### B. *Medi-Cal Disability Exemption*

In California, Welfare and Institutions Code section 14009.5 implements the disability exemption in subdivision (b)(2)(C): "The department may not claim in any of the following circumstances: [¶] . . . [¶] (2) Where there is any of the following. [¶] . . . [¶] (C) A surviving child who is blind or permanently and totally disabled, within the meaning of Section 1614 of the federal Social Security Act (42 U.S.C.A. § 1382c)."

The statute is supplemented by Title 22, California Code of Regulations, section 50961, subdivision (d)(5): "(d) An exemption from the Department's

claim exists in any of the following circumstances: [¶] . . . [¶] (5) When, *as of the date of the Department's notice of claim*, there is a surviving child of the decedent who is blind, or disabled, within the meaning of Section 1614 of the federal Social Security Act (42 USC Section 1382c)." (Italics added.)

The "notice of claim" refers to the notice required by Title 22, California Code of Regulations section 50962, subdivision (c), which provides that "[t]he Department shall provide written notice to the person handling the decedent's estate, which includes the following: [¶] (1) The basis for the estate claim; the specific statutes and regulations supporting the claim; the basis for an exemption from the claim; the right to seek a waiver of the Department's claim; the right to contest the Department's claim; the right to request an estate hearing if dissatisfied with the waiver decision; the timeframes for requesting a waiver or estate hearing; and the basis for the applicant to seek a waiver or estate hearing due to substantial hardship; [¶] (2) A copy of the itemized Medi-Cal payments that constitute the basis for the claim; and [¶] (3) An Application for Hardship Waiver, form DHCS 6195 (05/15)."

C. *The Department Concedes Exhaustion of Administrative Remedies Does Not Apply*

Although, as we have discussed, the Department provides a full administrative procedure for determining whether an applicant is entitled to the caretaker exemption, with judicial review by writ of administrative mandate, it does not do so for the disability exemption. Title 22, California Code of Regulations, section 50966, subdivision (a), provides: "(a) The Department shall withdraw its claim against the estate of a deceased Medi-Cal beneficiary when the surviving child or his or her representative provides [certain] documentary

21

evidence to the Department of Health Care Services, Estate Recovery Section, . . . which demonstrates the surviving child was blind or disabled as of the date of the Department's notice of claim." The required documentation is forwarded to the Department of Social Services (DSS), which makes the determination whether the exemption applies. (*Id*. at subd. (f).) However, a denial of the exemption by DSS "is not subject to review through an administrative hearing." (*Id.* at subd. (g).)

Because no administrative review is provided, the Department concedes that the doctrine of exhaustion of administrative remedies does not apply to the disability exemption, and that the trial court had jurisdiction to consider the issue. Thus, we consider whether the trial court's findings regarding appellant's lack of entitlement to the exemption comport with the relevant law and support the judgment.

D. *Evidence At Trial and the Trial Court's Ruling*

In the instant case, the Holloway letter of April 6, 2010 instructed the Department to contact trustees Sharon McClelland and Kathryn McClelland if the Department had any questions about reimbursement. On June 23, 2010, the Department sent a payment demand letter to Holloway and to Sharon McClelland (at the address for her given in the Holloway letter), stating that the Department was entitled to $61,358.57 from the decedent's estate under Welfare and Institutions Code section 14009.5. The letter and its attachments contained all the items required for a notice of claim under Title 22, California Code of Regulations, section 50962, subdivision (c).

At trial, appellant produced records from the Social Security Administration showing that, following an administrative hearing on his request for a disability determination, an administrative law judge ruled on March 2, 2012, that he was

22

disabled under the Social Security Act, and that the onset of the disability was December 1, 2011. It appears that appellant initially applied for a disability determination with an onset date of December 31, 2009, but later amended his requested onset date to December 1, 2011, which is the date relied upon by the administrative law judge in the ruling.

In the present case, considering this evidence in its statement of decision, the trial court ruled that appellant had not met his burden of proof because the onset of his disability as determined by the administrative law judge, December 1, 2011, occurred after the Department's notice of claim was sent on June 23, 2010, in response to the Holloway letter. The trial court noted that appellant "testified to the circumstances of why, when he was previously disabled during his mother's life, he changed the date so that he would not have to refund unemployment [insurance] benefits. But this claim of onset of the disability is unsubstantiated by letters, medical reports, medical opinions, or any other admissible evidence. The court cannot find on the evidence submitted . . . that [appellant] was disabled during his mother's life or at the time the DHS gave notice of its claim; rather the only evidence of any date of disability is 12/01/2011."[8]

---

[8] As an alternative ground, the trial court also found that the evidence was insufficient to prove that appellant was "permanently and totally disabled," because the administrative law judge's decision stated that "[m]edical improvement is expected with appropriate treatment. Consequently, a continuing disability review is recommended in 24 months." However, the disability exemption does not require a permanent and total disability. A disability under 42 United States Code section 1382c – the applicable provision for determining whether a person qualifies as disabled – means a disability that "can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." (42 U.S.C. § 1382c, subd. (a)(3).) On appeal, the Department does not rely on this portion of the trial court's ruling.

E. *Resolution on Appeal*

On appeal, appellant contends that the federal disability exemption under 42 United States Code section 1396p, subdivision (b)(2)(A), "says nothing about when the disability has to occur, only that [the child must] be disabled at the time of the recipient's death." The decedent died on March 2, 2010. According to appellant, the evidence showed he was disabled as of December 11, 2009 (the date of onset he originally claimed before the Social Security Administration), and that the trial court's factual finding that he was not disabled until December 1, 2011 was incorrect. Therefore, he contends that he was disabled when the decedent died, and he is entitled to the exemption.

However, as we have already explained, the record is insufficient for him to challenge the correctness of the trial court's factual findings. Thus, even if he were correct that the federal disability exemption applies when the disability exists at the time of the aid recipient's death, his contention fails.

Under Medi-Cal's implementation of the disability exemption, the disability must exist as of the date of the Department's notice of claim (tit. 22, Code of Cal. Regs., § 50961, subd. (d)(5)). As the trial court ruled, the Department's notice of claim was sent on June 23, 2010, but the evidence showed that the onset of appellant's disability was not until December 1, 2011. Thus, appellant failed to qualify under the Medi-Cal exemption.

Finally, to the extent appellant contends that the Medi-Cal exemption is invalid because it is inconsistent with the Medicaid exemption regarding the required date of disability onset, that inconsistency, if it exists (an issue we do not address) is immaterial in appellant's case. As we have noted, appellant does not qualify under the federal exemption as he interprets it. Thus, any purported

24

inconsistency between the exemption as provided by Medicaid and Medi-Cal does not affect the outcome of appellant's case.

IV.   *Failure to Hold a Final Status Conference*

Appellant contends that he was denied due process, because no final status conference was held before trial.  We disagree.

The clerk's transcript on appeal reflects that a final status conference was initially set for November 10, 2014.  However, on February 25, 2014, the case was assigned to a different judge, who vacated the prior final status conference date, and reset it for November 19, 2014, the same date as trial.  The Department filed and served its witness and exhibit lists on November 17, 2014.  The court's minute order of November 19, 2014, describes the nature of the proceedings as "TRIAL; FINAL STATUS CONFERENCE."  Thus, from the record, it does not affirmatively appear that no final status conference was held.  Rather, it appears that the final status conference occurred immediately before trial.

In any event, the basis of appellant's contention that he was denied due process is Los Angeles Superior Court rule 3.25 (rule 3.25), which states in relevant part that "the court will set [the final status conference] not more than ten days prior to the trial date" (subd. (f)), and that "[a]t least five days prior to the final status conference, counsel must serve and file lists of pre-marked exhibits to be used at trial" (subd. (f)(1)).

Appellant contends, in substance, that because the timing contemplated by rule 3.25, subdivisions (f) and (f)(1), was not met, he did not have the opportunity to see the evidence the Department intended to use until the trial began.  However, nothing in the record shows that in the trial court appellant objected on the ground that the local rule was violated, much less on the ground that his due process rights

25

were violated.[9]  Further, appellant cannot make a showing that he was prejudiced by the Department's failure to provide the witness and exhibit lists earlier.  We have no record of whether appellant engaged in any discovery procedures to prepare for trial.  Of course, those procedures are the proper avenue to learn the evidentiary basis of the opponent's case.  Further, from the record presented, it does not appear that there were any surprises.  At trial, the sole Department witness was Dave Eller.  According to the Department's witness list, he was going to offer testimony on the decedent's Medi-Cal benefits, the Department's multiple requests for reimbursement, the Department's review of any applicable exemptions, and the foundation for documents.  Assuming he testified as represented, none of the testimony could have been unanticipated.  Further, the statement of decision shows that appellant mounted a vigorous defense.  In short, there is no basis on which to find defendant was denied due process in the failure to hold a final status conference prior to the trial date.

V.    *Absence of a Court Reporter*

Relying on Government Code section 68086, subdivision (d), appellant contends that he was deprived of valid notice that a court reporter would not be

---

[9]    We note that it is not at all clear that the court violated rule 3.25.  Subdivision (g) of the rule provides:  "Nothing in this rule precludes the court, in its discretion and pursuant to the case differentiation principles of case management (Cal. Rules of Court, rule 3.710 et seq.), from ordering different trial preparation procedures."  The rule lists nonexclusive examples, including holding a final status conference more than ten days before the trial date.  (Rule 3.25, subd. (g)(1).)  Although the rule does not specifically list holding a final status conference *less* than ten days from the trial date, or on the day trial is scheduled to begin, nothing in the rule precludes it if the circumstances of the case justify it.  Of course, our record is incomplete and we can only speculate as to why the final status conference was apparently held on the day of trial.

provided, and argues that he should have been given notice by mail or by posting on the courtroom door or in the courtroom. He is mistaken.

Government Code section 68086, subdivision (d) provides in relevant part: "The Judicial Council shall adopt rules to ensure all of the following: [¶] (1) That parties are given adequate and timely notice of the availability of an official court reporter. [¶] (2) That if an official court reporter is not available, a party may arrange for the presence of a certified shorthand reporter to serve as an official pro tempore reporter, the costs therefor recoverable as provided in subdivision (c)."

The Judicial Council has responded to the mandate of Government Code section 68096 by enacting rule 2.956 of the California Rules of Court (rule 2.956). Rule 2.956(b) provides in relevant part: "(1) *Local policy to be adopted and posted*[.] [¶] Each trial court must adopt and post in the clerk's office a local policy enumerating the departments in which the services of official court reporters are normally available, and the departments in which the services of official court reporters are not normally available during regular court hours. If the services of official court reporters are normally available in a department only for certain types of matters, those matters must be identified in the policy. [¶] (2) *Publication of policy*[.] [¶] The court must publish its policy in a newspaper if one is published in the county. Instead of publishing the policy, the court may: [¶] (A) Send each party a copy of the policy at least 10 days before any hearing is held in a case; or [¶] (B) Adopt the policy as a local rule."

In the present case, there is no evidence that the Los Angeles Superior Court violated rule 2.956(b)(1), by failing to post its policy in the clerk's office. Thus, such a failure to post is not a basis on which to find that appellant did not have adequate notice. Further, in compliance with rule 2.956(b)(2), the Los Angeles County Superior Court has published its policy by adopting it as a local rule, Los

27

Angeles County Superior Court rule 2.21, which provides: "(a) <u>Unlimited Civil Cases</u>. Official court reporters are not normally available for reporting trials in unlimited civil cases." Also, in subdivision (e), the rule explains the procedure for obtaining a court reporter if a party wants one.[10] Thus, the record fails to support appellant's claim that he was denied valid notice that a court reporter would not be provided.

Appellant contends that he was at a disadvantage because he was representing himself. However, a self-represented party is held to the same procedural rules as a party who is represented by an attorney. "Under the law, a party may choose to act as his or her own attorney. [Citations.] '[S]uch a party is to be treated like any other party and is entitled to the same, but no greater consideration than other litigants and attorneys. [Citation.]' [Citation.]" (*Nwosu v. Uba* (2004) 122 Cal.App.4th 1229, 1246-1247.)

Finally, we note that even without a court reporter, appellant was not without a remedy to provide a more complete record on appeal. He had the option to file an agreed statement (Cal. Rules of Court, rule 8.134) or a settled statement (*id.,* rule 8.137), but failed to do so.

---

[10]  "(e) <u>Procedure for Court Reporter Services</u>. Parties desiring the services of a court reporter for a proceeding for which the court does not make a court reporter available may arrange for the appointment of a court approved official court reporter from a list maintained by the court, or may, by stipulation, arrange for the appointment of a privately retained certified shorthand reporter, in accordance with the procedures posted on the court's website and available in the clerk's office. If an arrangement for a court reporter is made under this subdivision, it is the responsibility of the arranging party or parties to pay the reporter's fee for attendance at the proceedings."

## DISPOSITION

The judgment is affirmed.  The Department shall recover its costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

WILLHITE, Acting P. J.

We concur:

MANELLA, J.

COLLINS, J.

29